914 F.2d 298
 286 U.S.App.D.C. 242
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Michael JONES, aka Arthur Hilton, Appellant.
 No. 90-3001.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 1, 1990.
 
 Before WALD, Chief Judge, and RUTH B. GINSBURG and SENTELLE, Circuit Judges.
 JUDGMENT
 Per Curiam.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of counsel. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant a published opinion. See D.C.Cir.R. 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 Arthur Hilton appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and (b)(1)(A)(iii). He argues that his conviction was based on evidence obtained by police during an unlawful search and seizure and that the district court erred in denying his pretrial motion to suppress. He further argues that there is insufficient evidence to sustain his conviction and that the district court erred in denying his motions for judgment of acquittal. We find no reversible error in the district court's denial of these motions. Therefore, we sustain the conviction.
 
 I.
 
 5
 Hilton's arrest occurred in a setting now commonplace. He was apprehended at the Greyhound Trailways Bus Station in northeast Washington, D.C. in the course of a surveillance by three officers of the Metropolitan Police Department's Narcotics Interdiction Unit. The episode occurred in the early morning of February 16, 1989. The officers, dressed in plainclothes and with their weapons at all times concealed, had come to the Station to observe passengers arriving from New York and Miami.
 
 
 6
 Detective Edward Curley, in testimony at the suppression hearing and at trial, gave the following account of the encounter. At approximately 5:20 a.m., Curley saw Arthur Hilton* disembark from a bus that had just arrived from New York City. Hilton, then between eighteen and nineteen years old, was alone and carried a grey tote bag. After observing Hilton make a phone call and start to walk through the station, Curley approached Hilton, displayed his identification card, and stated that he was a police officer. Curley inquired whether he could ask Hilton a few questions. Hilton responded, "Sure." Together, the two walked into a fast food restaurant located in the terminal. Another member of the Interdiction Unit, Detective Edward Hanson, followed them and remained nearby to observe the encounter.
 
 
 7
 After asking Hilton about his destination, Curley informed Hilton that he was a member of the Narcotics Interdiction Unit and asked Hilton if he was carrying any narcotics. Hilton denied that he was. Curley requested permission to search Hilton's bag, and Hilton responded, "Yes, go ahead." Curley repeated his request, saying, "Are you sure it's all right for me to search your bag?" Again Hilton replied, "Go ahead." Next, Curley requested permission to search Hilton's person. Hilton verbally consented and raised both hands, which Curley told him was unnecessary.
 
 
 8
 Curley further testified that as he was searching Hilton's waistband area, Hilton twisted away slightly as if he did not want Curley to feel the area near the left front of his waistband. When Curley succeeded in searching the front of Hilton's waistband, he felt a hard object and asked what it was. Hilton quickly reached for the object. A brief struggle ensued, culminating in Hilton's arrest and the recovery of a plastic bag from Hilton's waistband containing 75 grams of rock-like material later analyzed as 60% pure cocaine base. In addition, a pocket-size balance beam scale was recovered from Hilton's tote bag.
 
 
 9
 Hilton presented no evidence at the suppression hearing, and the district judge denied the motion. At trial, Hilton testified in his own behalf; except for a few details, he did not dispute Detective Curley's testimony. Hilton testified that he had picked up the cocaine and the scale from the floor of the bus as he was disembarking, and that he intended to keep the drugs for his personal use. The jury found Hilton guilty of one count of possession with intent to distribute 50 grams or more of cocaine base.
 
 II.
 
 10
 Crediting Detective Curley's testimony, the district judge conformed to this court's precedent in rejecting the contention that Hilton had been subjected to a "seizure" in violation of the fourth amendment. See, e.g., United States v. Morgan, No. 87-3089 (D.C.Cir. Sept. 14, 1990); United States v. Smith, 901 F.2d 1116 (D.C.Cir.1990); United States v. Maragh, 894 F.2d 415 (D.C.Cir.1990); United States v. Joseph, 892 F.2d 118 (D.C.Cir.1989); United States v. Winston, 892 F.2d 112 (1989), cert. denied, 110 S.Ct. 3277 (1990); United States v. Lloyd, 868 F.2d 447 (D.C.Cir.1989). Encounters between a police officer and a member of the general public qualify as a seizure "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573-74 (1988) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Steward, J.)). As we have several times stressed, the "reasonable person" used as the measuring rod is one "innocent of any crime." See, e.g., United States v. Savage, 889 F.2d 1113, 1116 (D.C.Cir.1989). We have furthermore emphasized that, under the "free to leave" test, a seizure occurs only when a police officer, either by force or a show of authority, restrains a person's liberty. See Gomez v. Turner, 672 F.2d 134, 141 (D.C.Cir.1982).
 
 
 11
 Hilton does not claim that Detective Curley physically restrained him, nor has Hilton pointed to indicia of an undue display of authority, e.g., visible weapons or verbal threats. See United States v. Brady, 842 F.2d 1313, 1314 (D.C.Cir.1988); see also Mendenhall, 446 U.S. at 554 ("the threatening presence of several officers"); Chesternut, 486 U.S. at 575 ("blocking" a person's passage). Detective Curley, the record indicates, was courteous and conversational in his questioning; he did not block Hilton's way; he asked at each step whether he could interview Hilton, search his bag, and search his person; he did not display any weapons; and he conducted the entire encounter in a public space.
 
 
 12
 In contrast to United States v. Battista, 876 F.2d 201, 205 (D.C.Cir.1989), where the police awakened a passenger for questioning at 6:30 a.m. inside a train compartment, the time of the encounter here was determined "by nothing more sinister than the time of [the] bus's arrival in [D.C.]." Winston, 892 F.2d at 112. We have declined to impose on officers in Detective Curley's situation a general obligation to advise a prospective interviewee that he may refuse to answer. See United States v. Castellanos, 731 F.2d 979, 984 (D.C.Cir.1984). Nor have we imposed such an obligation based on the age of the interviewee. See Lloyd, 868 F.2d at 451 (allowing evidence obtained from an eighteen-year old). A non-coercive encounter between a police officer and a member of the public does not even rank as a "stop"; Detective Curley, therefore, was free to approach Hilton even if Curley had "no articulable reason to suspect" that Hilton had committed or was committing a crime. Winston, 892 F.2d at 117.
 
 
 13
 Because Curley's initial encounter with Hilton was not a seizure, Curley could proceed to search Hilton's tote bag and person, provided that Hilton consented to each search. See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 227 (1973); Brady, 842 F.2d at 1315. At the suppression hearing, Hilton argued that he proffered no genuine consent, but rather "acquiesced" in deference to police authority, as evidenced by his putting his hands up when Curley began searching his person. The district court, however, found as a matter of fact that Hilton's consent to the search was voluntary, not coerced. That finding, we are satisfied, was not clearly erroneous. See, e.g., Lloyd, 868 F.2d at 451. Nor was it clear error for the district court to find that Hilton did not withdraw his consent to the body search when he tried to twist away from Curley's hands as Curley was feeling the front of his waistband.
 
 III.
 
 14
 Hilton also contends that the evidence presented at trial was insufficient to prove intent to distribute cocaine, an essential element of the offense for which he was convicted. A conviction by jury can be set aside only if the evidence is such that a reasonable mind could not find guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Joseph, 892 F.2d at 126; Castellanos, 731 F.2d at 984. In applying this standard, the court must "view the evidence in the light most favorable to the government, giving full play to the factfinder's right to determine credibility, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." Castellanos, 731 F.2d at 984; see Joseph, 892 F.2d at 125.
 
 
 15
 Hilton argues that the only direct evidence of his intent was his own testimony that the drugs were for personal use, and that all the evidence against him--the quantity of cocaine in his possession--is circumstantial. In determining whether sufficient evidence supports the verdict, however, circumstantial evidence does not rank below direct evidence. See Castellanos, 731 F.2d at 984. This court has repeatedly held that intent to distribute may be inferred from possession of a quantity of drugs larger than that needed for personal use. See, e.g., United States v. Dunn, 846 F.2d 761, 764 (D.C.Cir.1988); Castellanos, 731 F.2d at 985. A reasonable jury, presented with evidence of the amount of drugs Hilton was carrying, might well conclude that he intended to distribute them.
 
 Conclusion
 
 16
 Curley's questioning of Hilton at the Greyhound Trailways Bus Station did not constitute a seizure. The subsequent search of Hilton's bag and person did not transgress constitutional limitations. The quantity of cocaine in Hilton's possession was sufficient evidence to convict him of possession with intent to distribute. Therefore, the district judge did not err in denying Hilton's motion to suppress and his motions for judgment of acquittal, and the conviction is sustained.
 
 
 
 *
 Detective Curley reported that defendant-appellant had consistently given his name as Michael Jones. Appellant's Brief, however, refers to defendant-appellant as Mr. Hilton