# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3601

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Craig Sanders, a/k/a Sparks, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted :  March 4, 2005
Filed:   September 23, 2005

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Craig Sanders appeals the district court's denial of his motion to suppress evidence seized during a search of his person.  The government contends Sanders consented to the search and the district court properly denied the motion.  We reverse and remand.

I

On June 17, 18 and 19, 2002, Cedar Rapids, Iowa, police officer Ryan Abodeely received telephone calls from an employee at a local motel regarding a

guest, later identified as Sanders, who was acting suspiciously. The caller indicated many people were coming and going from Sanders's room, and hotel employees suspected he might be dealing drugs. On June 17 and 18, Abodeely went to the hotel and knocked on his door but no one answered. On June 19, Abodeely returned to the hotel and observed Sanders in the parking lot talking to someone in a car. Moments later Sanders got into another car and both drove off. Abodeely's investigation into his identity revealed he had previously been convicted of various drug felonies and was suspected of ongoing illegal drug trafficking. The parties agree, however, Abodeely did not, on any of the three occasions he visited the hotel, observe anything giving rise to probable cause to conduct a search.

On June 20, Abodeely returned with another officer and again knocked on Sanders's hotel room door. Sanders testified the officers knocked loudly and persistently. Abodeely testified he could not remember how long he knocked. In either event, Sanders looked out the window of the room and moments later opened the door. Abodeely testified he and his colleague identified themselves as Cedar Rapids police officers, asked permission to enter the room, and Sanders allowed them to enter. Conversely, Sanders testified he initially blocked the officers' entry into the room but when ordered to step back, did so and allowed them to enter.

Abodeely testified he told Sanders the officers suspected drug dealing and asked permission to search the room and Sanders's person. Sanders claims he was simply told to turn around and let the officers search him. Both agree Sanders raised his arms to facilitate a search of his person. Abodeely indicated he searched Sanders's upper body without incident but when he attempted to reach into one of his front pants pockets, Sanders lowered his hands and blocked Abodeely from going into his pockets. Abodeely ordered him to raise his hands and again attempted to search the pocket. This scenario repeated itself at least five times. Each time, as Abodeely attempted to reach into Sanders's pocket, there was a lowering of his arms and blocking of Abodeely's hands, only to be ordered to raise his hands again.

-2-

At the suppression hearing, Abodeely testified:

> And I began to move down towards his front pockets on his pants; as I did that, he kept bringing his hands down and tried to block my hands from going into his pockets. I advised him that he needed to keep his hands up in the air. As I searched him, started to go once again to search the pockets, he did this (indicating) again where he put his hands down and tried to block my hands. This happened approximately five times at which time I became kind of concerned for Investigator Joecken and myself's safety.

Suppression Hearing Tr. p. 11.

At the suppression hearing, Sanders testified he felt compelled to submit to the search and brought his arms down to keep his pants from being pulled down as Abodeely reached into the pockets. While he repeatedly blocked Abodeely's hands, he did not verbally withdraw consent to search.

Abodeely testified Sanders's refusal to cooperate with the search, and concerns about officer safety, led him to handcuff him. Id. at 21 ("[B]ecause of his uncooperative state and for my own safety, I then handcuffed him."). Notably, however, Abodeely admitted he likely patted Sanders down before actually reaching into his pockets and discovered nothing to indicate he was armed.

> Q: Did you ever actually pat him down, or did you just reach and grab?
>
> A: I'm not for sure on that. I would guess I patted him down, because I don't just put my hands in the pockets because I'm afraid there may be a needle or weapon of some sort.
>
> Q: But there's nothing in your report to indicate that you ever felt anything that was consistent with a weapon in his pocket.
>
> A: No.

Id. at 23.

After Sanders was handcuffed, Abodeely was able to complete the search which led to the discovery of eight small rocks of crack cocaine.

Sanders was indicted on one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851. He moved to suppress the crack cocaine discovered in the search of his person, arguing he did not give consent. Alternatively, he also argued he withdrew his consent as evidenced by his repeated attempts to block Abodeely's hands from searching his pants pocket. The district court rejected Sanders's arguments holding he gave consent for the officers to enter the hotel room and to search his person. The court further held his actions did not communicate an intent to withdraw his consent.

Additionally, at sentencing, Sanders objected to the district court's use of the United States Sentencing Guidelines, arguing they were unconstitutional. In response, the district court imposed alternative sentences of 210 months under the Guidelines and 300 months in the event the Guidelines were held unconstitutional.

On appeal, Sanders argues the district court erred in refusing to suppress the drug evidence discovered in the search of his person, and the district court's sentence was improper because the Guidelines are unconstitutional.

II

We review the district court's conclusions of law regarding a motion to suppress de novo and its fact findings for clear error. United States v. Booker, 269 F.3d 930, 931 (8th Cir. 2001). We will affirm the district court's denial of the motion to suppress "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record,

-4-

[we] are left with the definite and firm conviction that a mistake has been made." Id. (quoting United States v. Lowe, 50 F.3d 604, 607 (8th Cir. 1995)).

A.      Consent to Search

"Under the fourth and fourteenth amendments, searches conducted without a warrant issued upon probable cause are presumptively unreasonable, subject to a few specifically established exceptions." United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004). Consent to search is one such exception, and "[a] warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." United States v. Brown, 763 F.2d 984, 987 (8th Cir. 1985). Whether consent is voluntarily given is a question of fact, Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973), and on appeal, we review the district court's fact findings for clear error. United States v. Lee, 356 F.3d 831, 834 (8th Cir. 2003).

The test applied to determine if consent is free and voluntary is whether, in light of the totality of the circumstances, consent was given without coercion, express or implied. Bustamonte, 412 U.S. at 227; Laing v. United States, 891 F.2d 683, 686 (8th Cir. 1989). The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, Laing, 891 F.2d at 686, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968). "Rather, the government must show that a reasonable person would have believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." Cedano-Medina, 366 F.3d at 684 (internal citations and quotations omitted).

Factors we consider when determining if consent was freely and voluntarily given, as set forth in United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990),

-5-

include 1) age, 2) general intelligence and education, 3) whether the individual was under the influence of drugs or alcohol, 4) whether he was informed of his Miranda[1] rights, and 5) whether he had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals.

Additionally, the environment in which the alleged consent was secured is also relevant. Accordingly, we consider 1) the length of time one was detained, 2) whether the police threatened, physically intimidated, or punished the suspect, 3) whether the police made promises or misrepresentations, 4) whether the suspect was in custody or under arrest when the consent was given, 5) whether the consent occurred in a public or a secluded place, and 6) whether the suspect stood by silently as the search occurred. United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001). We also consider "whether the defendant's contemporaneous reaction to the search was consistent with consent." United States v. Jones, 254 F.3d 692, 696 (8th Cir. 2001). "The factors should not be applied mechanically, and no single factor is dispositive or controlling." United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000) (internal citation omitted).

The district court found Sanders invited the officers into the hotel room and consented to the search of his person and hotel room. There is evidence in the record to support these fact findings and they are not clearly erroneous. Further, applying the law of consensual searches to the facts as found by the district court, we conclude there is nothing to suggest he was coerced into giving consent. He had considerable experience with law enforcement, was not intoxicated, and the officers' actions were not unduly threatening or intimidating. Thus, we conclude his consent to search his person was voluntarily given.

---

[1]Miranda v. Arizona, 384 U.S. 436, 473 (1966).

B.      Withdrawal of Consent

Sanders next argues the fruits of the search should nonetheless be suppressed because he withdrew his consent before the drugs were discovered.  We agree.

Once given, consent to search may be withdrawn: "Withdrawal of consent need not be effectuated through particular 'magic words,' but an intent to withdraw consent must be made by unequivocal act or statement."  United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004) (citation omitted).  If equivocal, a defendant's attempt to withdraw consent is ineffective and police may reasonably continue their search pursuant to the initial grant of authority.  Id. (finding protests about the length of time the search was taking without any specific request to leave did not under the circumstances amount to an unequivocal withdrawal of consent).  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  Florida v. Jimeno, 500 U.S. 248, 251 (1991).  Accordingly, we must determine whether a reasonable person would have concluded Sanders's repeated attempts to thwart Abodeely's attempts to search his pockets amounted to a withdrawal of consent.

"[C]onduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both."  Burton v. United States, 657 A.2d 741, 746-47 (D.C. App. 1994) (footnotes omitted).  For example, a defendant who twice grabbed a deputy's hand in a attempt to stop him from searching a pack of cigarettes was held to have withdrawn his earlier consent, and "it was improper for the officer to continue the search over the defendant's objections."  Jimenez v. State, 643 So.2d 70, 72 (Fla. Dist. Ct. App. 1994).  Similarly, in Lowery v. State, 894 So.2d 1032, 1034 (Fla. Dist. Ct. App. 2005), the court held a defendant withdrew his consent to search by "twice attempt[ing] to reach into his pockets at the

same time that the officer was attempting to search the pockets." Additionally, the court found it improper for the officer to order the defendant to stop interfering with the search because "[i]n a consensual search, an officer has no authority to command the person being searched to stop interfering with the search." Id.; see also United States v. Ibarra, 731 F. Supp. 1037, 1039 (D. Wyo. 1999) (noting closing and locking car trunk after a consensual search amounted to withdrawal of consent to further search of trunk), Cooper v. State, 480 So.2d 8, 11 (Ala. Crim. App. 1985) (locking plane doors after consensual search revoked consent for subsequent search of plane).

Conversely, when a defendant's actions are ambiguous or equivocal courts refuse to find an effective withdrawal of consent. Thus, a defendant's act of merely lowering his hands as an officer searched his groin area was insufficient to demonstrate an unequivocal withdrawal of consent. State v. Mattison, 575 S.E.2d 852, 857 (S.C. Ct. App. 2003). Similarly, in Burton, the court declined to find the defendant withdrew consent simply by putting his hand in his pocket and turning toward the window, because he complied without comment upon being asked to remove his hand from his pocket. 657 A.2d at 748. Finally, in United States v. Jones, the court held twisting away slightly during a consensual pat-down search was insufficient to communicate to the officer an unequivocal intent to withdraw consent. No. 90-3001, 1990 WL 142342, at *2 (D.C. Cir. Oct. 1, 1990) (unpublished).

Here, the district court found Sanders's actions did not amount to an unequivocal withdrawal of consent. In so holding, the district court noted the magistrate judge had relied upon his testimony indicating he was only trying to keep his pants from falling down when he repeatedly blocked Abodeely's hands. The district court, however, stated his subjective intent was irrelevant to whether a person would objectively believe his actions amounted to a withdrawal of consent. See Jimeno, 500 U.S. at 251 (applying a reasonable person standard for determining the scope of consent). We agree the district court properly stated the applicable rule, but, because we are left with the definite and firm conviction a mistake has been made, we

hold the district court clearly erred in concluding Sanders did not unequivocally withdraw his consent.

It is undisputed that at least five times Sanders moved his hands down and prevented Abodeely from searching his pockets. Because this was a consensual search, he had every right to withdraw or limit the scope of his consent by taking actions clearly designed to prevent Abodeely from searching further. His actions made it apparent he did not intend to permit Abodeely to search his pockets, and Abodeely exceeded his authority by repeatedly ordering him to comply with the search. Lowery, 894 So.2d at 1034. In the end, the only way Abodeely could complete the "consensual" search was to place Sanders in handcuffs. Based on these undisputed facts, we conclude the district court clearly erred when it held Sanders's actions, which so interfered with Abodeely's ability to search him he had to be handcuffed, communicated anything but a withdrawal of consent. Any objective observer watching this scenario would conclude he was not consenting to the search of his pockets. Stated another way, if a suspect has to be handcuffed to prevent interference with a search of his person, the search was not consensual.

The district court suggests the reason Sanders was handcuffed had nothing to do with his lack of cooperation or the withdrawal of consent. Rather, the district court states "officers handcuffed Sanders . . . out of a concern for officer safety. The fact a subsequent event caused officers to handcuff Sanders does not void his earlier verbal consent." We disagree with the district court's reasoning. Even assuming the officers were justified in handcuffing Sanders because of officer safety, they were not justified in expanding the consensual search beyond the scope of his limited consent. As already noted, his actions clearly communicated to an objective observer he did not want Abodeely searching his pockets. Though officer safety would have justified a pat-down of Sanders's pockets to determine whether he had a weapon, "the sole justification for a pat-down search is for weapons, [and] only searches 'reasonably designed to discover concealed weapons' are permissible." United States v. Hanlon,

-9-

410 F.3d 926, 929 (8th Cir. 2005) (quoting United States v. Roggeman, 279 F.3d 573, 577 (8th Cir. 2002)). Here, the record contradicts any claim that Abodeely reasonably believed, after conducting a pat-down search, Sanders was armed. Accordingly, when "an officer seizes an item of contraband from an individual's person after having concluded that no weapons are present, the evidence will be suppressed." Id. (citing Minnesota v. Dickerson 508 U.S. 366, 378 (1993)).

The dissent, as did the district court, contends these facts would convince a reasonable observer Sanders's actions did not interfere with or prevent the search. Indeed, both argue Sanders's repeated interference actually demonstrates he cooperated with Abodeely's attempts to complete the search. We cannot countenance this clearly erroneous view of the evidence. The district court's finding that Sanders did not withdraw his consent, founded on an interpretation of the evidence which posits his repeated interference signaled cooperation, leads us to the unmistakable conclusion a mistake has been made. Accordingly, we are compelled to reverse.

The dissent recognizes Abodeely testified Sanders repeatedly prevented him from completing the search by attempting to block his hands. It also, however, argues Sanders testified the only reason he dropped his hands was to keep his pants from being pulled down, and, unless Sanders or Abodeely testified he grabbed Abodeely's hands or put his own hands over his pockets, our decision rests on mere speculation. The dissent further contends the only evidence supporting our conclusion that Sanders's actions prevented the search "is Abodeely's speculation that Sanders 'tried to block my hands.'" Finally, the dissent argues our decision is unsound because "both Abodeely and Sanders testified that, without saying anything, Sanders simply lowered his arms an unspecified distance each time Abodeely reached into Sanders's pockets and caused his pants to pull downward."

Abodeely did not testify Sanders simply lowered his arms. Instead, he stated Sanders repeatedly tried to block his hands from going into his pockets. Further, Abodeely never testified his attempts to search Sanders's pockets caused his pants to

-10-

pull downward. A careful reading of the transcript indicates Abodeely did not actually reach into Sanders's pockets until after he was in handcuffs. Nonetheless, this is not a foot-race between Abodeely's and Sanders's conflicting interpretations of what transpired. While their testimony is relevant to our inquiry, we are not called upon to simply accept one version and reject the other. Rather, cast as we are in the role of reasonable observer to these events, we must view the entire record through the critical eye of a reasonable observer. Jimeno, 500 U.S. at 251. Accordingly, we ask: "What would a reasonable observer conclude?"

Our reasonable observer would have heard Sanders consent to the search of his room and person. The observer would have watched as Sanders raised his hands and permitted Abodeely, without interference, to search his upper body. As Abodeely then attempted to search Sanders's pants pockets, our reasonable observer would have seen Sanders's attitude change as he prevented the search by dropping his hands; only to be ordered to raise them again. Our observer would have watched as this scenario repeated itself again and again, and would have understood Sanders's actions prevented the search because Abodeely repeatedly ordered him to raise his hands and was only able to complete the search once Sanders was in handcuffs. This evidence is not speculative – it rests neither on Abodeely's nor Sanders's subjective understanding. Instead, it reflects what a reasonable observer to these events would have witnessed. To suggest such an observer could reasonably conclude Sanders had not clearly indicated he did not want Abodeely searching his pants pockets is a conclusion we cannot suffer.

We also disagree with the dissent's contention that our decision cannot stand because there is no evidence suggesting Sanders grabbed Abodeely's hands or placed his hands over his pockets. As set forth above, the universe of conduct demonstrating withdrawal of consent is not so narrowly defined. We conclude Sanders clearly demonstrated his withdrawal of consent by repeatedly preventing Abodeely from searching his pants pockets – a finding fully supported by the record. Indeed, the undisputed evidence from the suppression hearing – as set forth earlier in this opinion

– conclusively establishes Sanders prevented Abodeely from completing the search at least five times. We also reject the dissent's suggestion that a reasonable observer to these events would have concluded Sanders's repeated interference with the search actually demonstrated an air of cooperation. The dissent argues: "Like the district court, what I find particularly dispositive in this case is Sanders's repeated cooperation with Abodeely's requests to raise his arms so that the search could continue." This conclusion is clearly erroneous because it ignores the reality of what transpired. What a reasonable observer would have seen and heard was Abodeely repeatedly ordering Sanders to cooperate, followed by Sanders's repeated *failure* to cooperate. Abodeely testified: "I kept asking him to raise his hands in the air, and then *because of his uncooperative state* and for my own safety, I then handcuffed him." Suppression Hearing Tr. p. 21 (emphasis supplied). Based on this evidence, a reasonable observed would have concluded the search only continued after Sanders was in handcuffs and could no longer interfere.

In arguing against today's holding, the dissent cites State v. Watson, 864 A.2d 1095 (N.H. 2004), United States v. Brown, 884 F.2d 1309 (9th Cir. 1989), and Mattison, 575 S.E.2d 852. None of these cases, however, involved suspects whose actions prevented police from conducting a search after consent was given. In Watson the defendant consented, albeit reluctantly, to the search of his hotel room but did nothing to interfere with the search. 864 A.2d at 541-42. Similarly, in Brown the court held a suspect's mere reluctance to admit he was carrying the keys to his suitcases did not vitiate his earlier consent. 884 F.2d at 1311-12. Finally, in Mattison the defendant repeatedly moved his hands to his groin area during a pat-down search but there is nothing in the record showing those hand movements in any way prevented or interfered with the officer's ability to conduct the search. 575 S.E.2d at 586-87. Rather, the officer testified Mattison "[w]as very cooperative." Id. at 854. Here, Sanders's actions, which prevented Abodeely from conducting the search, were "clearly inconsistent with the apparent consent to search." Burton, 657 A.2d at 746-47. Because we "are left with the definite and firm conviction that a mistake has been

made," Lowe, 50 F.3d at 607, we hold the district court clearly erred in concluding Sanders did not withdraw his consent to search.

## III

The order and judgment of the district court denying Sanders's motion to suppress evidence seized during the search of his person is reversed. Because we reverse the district court's denial of the suppression motion, we need not address Sanders's remaining claim.

GRUENDER, Circuit Judge, dissenting.

I agree with the Court that the district court did not clearly err by finding that Craig Sanders voluntarily consented to a search of his motel room and of his person. I respectfully dissent, however, because I do not agree that the district court clearly erred by finding that Sanders did not unequivocally withdraw the voluntary consent to the search of his person. I believe that in reaching its conclusion, the Court has misapplied the appropriate standard of review by not deferring to the district court's eminently reasonable view of the evidence. The Court's conclusion conflicts with our well-established case law and the weight of Fourth Amendment jurisprudence from other jurisdictions.

## I

The proper disposition of a case on appeal depends, in the first instance, on the appropriate appellate standard of review. As with the question of whether a defendant voluntarily consented to a search, Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973), the question of whether a defendant withdrew that consent is a factual determination. In this case, both the Court and I agree that the clearly erroneous standard of review applies to the district court's factual finding that Sanders did not unequivocally withdraw his consent to the search of his person.

-13-

Supra at 9; see also United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004) (citing United States v. Brown, 345 F.3d 574, 578 (8th Cir. 2003)). I disagree, however, with the Court's application of the clearly-erroneous standard of review.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Stated another way, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." In re Papio Keno Club, Inc., 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)). The district court's findings of fact, therefore, cannot be clearly erroneous where there are two permissible views of the evidence. Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." United States v. Tucker, 243 F.3d 499, 506 (8th Cir. 2001) (quoting Bessemer City, 470 U.S. at 573-74).

Therefore, in order to hold that Sanders unequivocally withdrew his consent, the Court must conclude that the district court's view of the evidence was unreasonable and impermissible. Instead, the Court refuses to acknowledge the reasonable conclusion of the district court. As a result, despite conceding the applicability of the more deferential clear-error standard of review, the Court effectively engages in a de novo review of the district court's factual conclusion. In my view, the district court's conclusion is supported by the evidence in the record and should be granted the deference afforded a fact-finder under the clearly erroneous standard.

-14-

## II

At the suppression hearing, Investigator Ryan Abodeely testified that each time he asked Sanders to raise his arms, Sanders "tried to block" the search by lowering his arms. Sanders, however, did not testify that he was trying to prevent the search from proceeding but rather testified that he was only reflexively trying to stop his pants from being pulled downward.[2] Although Sanders's subjective intent in reaching toward his waistband is clear (and clearly contrary to the conclusion reached by the Court today), his subjective intent does not figure into my analysis. The district court correctly applied an objective standard for determining whether consent was unequivocally withdrawn. See United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004) (requiring unequivocal act or statement to effectively withdraw voluntary consent to a search). In other words, the district court properly determined the facts surrounding the search based on what a reasonable person would have understood by

---

[2]Sanders testified on direct examination at the suppression hearing that the only reason he lowered his arms was to pull his pants up. During cross-examination, he elaborated on why he lowered his arms:

| | |
|---|---|
| GOVERNMENT: | And when you put your hands down, the only thing you were trying to do was pull your pants up? |
| SANDERS: | Yeah, 'cause my pants – 'cause when you go in my pocket, the rim come down like this (indicating), and I'm like, Whoa, what's up. |
| THE COURT: | What came down? |
| SANDERS: | The hands like this (indicating). They were in my pocket, hand, and I'm like, Whoa, what's up? That's all. It was just a reflex. That's all. |

-15-

the exchange between Sanders and Abodeely. See Florida v. Jimeno, 500 U.S. 248, 251 (1991). Neither the Court nor I believe that the district court's conclusion that consent was not unequivocally withdrawn is based on an incorrect application of the law.

The Court has concluded that the *only* permissible view of the evidence is that when Sanders lowered his arms, he was attempting to prevent the search of his pockets. In fact, the only evidence supporting the Court's factual conclusion that Sanders's actions were clearly designed to prevent Abodeely from searching his pockets is Abodeely's speculation that Sanders "*tried* to block my hands." Supra at 3 (emphasis added). Perhaps this would be the *only* permissible inference if either Abodeely or Sanders had testified that Sanders made some *unequivocal* gesture, such as grabbing Abodeely's hands, putting his own hands over his pockets, or simply saying "stop." Importantly, however, both Abodeely and Sanders testified that, without saying anything, Sanders simply lowered his arms an unspecified distance each time Abodeely reached into Sanders's pockets and caused his pants to pull downward.[3]

In determining whether Sanders unequivocally withdrew his consent to the search, it is important to focus on both Abodeely's and Sanders's descriptions of the events because this is the only evidence available to the reasonable observer. The reasonable observer does not know Sanders's purpose in lowering his arms nor does

---

[3]From the transcript of the suppression hearing, we know that Sanders reenacted his gesture for the benefit of the court. See supra n.2. Unfortunately, limited as we are to the written record, we are unable to discern the extent of Sanders's gesture. This is why we "review the facts supporting the district court's [suppression ruling] for clear error, mindful that '[w]hen applying this standard, we give deference to the fact finder, who had an opportunity to observe the demeanor and credibility of the witnesses.'" United States v. Hammons, 152 F.3d 1025, 1028 (8th Cir. 1998) (quoting United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir. 1998)).

she know what Abodeely thinks Sanders's purpose might be. Rather, the reasonable observer must rely on what she sees and hears.

I submit that the district court's conclusion that Sanders did not unequivocally withdraw his consent to search his person is quite reasonable. As the reasonable observer entered the motel room, she would have observed Sanders, his six-year-old grandson and a woman surrounded by evidence of recent drug use. The reasonable observer would not only have witnessed Sanders voluntarily consent to a search of his motel and his person but would also have seen him assisting the search of his person by standing and placing his hands in the air without any prompting from Abodeely. The reasonable observer would have noticed that as Abodeely reached into his pockets, Sanders's waistband was pulled downward. She would have also observed Sanders lower his arms as his waistband was being pulled downward.[4] The reasonable observer would have then watched as Abodeely stopped the search process and asked Sanders to keep his hands in the air before the search was resumed. This exchange would have occurred four or five times, and each time, the reasonable observer would have seen Sanders comply without hesitation or protest. After the final iteration of the exchange, the reasonable observer would have seen Abodeely place Sanders into handcuffs. She would have listened as Abodeely explained that Sanders was not under arrest but that he was being handcuffed only for the investigators' safety. Even after being handcuffed, Sanders did not say anything that would have alerted the reasonable observer to a desire that the search be stopped. Finally, the reasonable observer would have watched as the search proceeded without incident until Abodeely discovered that Sanders had eight baggies of crack cocaine and $138 in cash in his pockets. Based on these observations, the district court was

---

[4]As Sanders himself testified, it would be quite reasonable for our reasonable observer to conclude that Sanders reflexively lowered his arms in response to his pants being pulled downward. The Court's assertion that Abodeely did not reach into Sanders's pockets until after he was in handcuffs, supra at 11, is belied by the testimony of Sanders, as quoted supra n.2.

quite reasonable in reaching its conclusion that Sanders did not unequivocally withdraw consent.

## III

"Withdrawal of consent need not be effectuated through particular 'magic words,' but an intent to withdraw consent must be made [known] by unequivocal act or statement." Gray, 369 F.3d at 1026. Statements of impatience and protests to leave, such as "the length of the search [is] 'ridiculous'" and "[we're] ready to go now," have been held insufficient to unequivocally withdraw consent. Id. at 1026-27; United States v. Ross, 263 F.3d 844, 845-46 (8th Cir. 2001) (holding that statements of impatience did not amount to withdrawal of consent). Further, courts have held that ambiguous actions that may be inconsistent with the progress of a search are not unequivocal acts withdrawing consent. See United States v. Wilmore, 57 Fed. Appx. 949, 953 (3d Cir. 2003) (unpublished) (taking a step or two backward in order to flee after the officer stated his intent to search the suspect's person was not an unequivocal withdrawal of consent); United States v. Kubbo, 17 Fed. Appx. 543 (9th Cir. 2001) (mem.) (removing the carpet out of the back of a vehicle and folding it over in a manner that indicated to the officers that something was hidden did not impliedly withdraw or narrow the scope of the defendant's consent). Effective withdrawal of consent, therefore, requires an act or statement clearly and unequivocally contrary to the voluntary consent to a search. See Burton v. United States, 657 A.2d 741, 746-47 (D.C. App. 1994) (listing cases where courts have and have not found withdrawal of consent).

The most generous interpretation of Sanders's action is that lowering his arms somehow reflected his reluctance to allow the search to continue. However, "[m]ere reluctance to a continued search, once an explicit and unambiguous statement of consent has been provided, is not necessarily sufficient to imply a withdrawal [of] such consent." Kubbo, 17 Fed. Appx. at 545. This is particularly true when the act allegedly withdrawing consent is not accompanied by any statement of protest. See

Burton, 657 A.2d at 746 n.11 (discussing situations where actions clearly inconsistent with consent are not accompanied by statements); cf. Metcalf v. Long, 615 F. Supp. 1108, 1117 (D. Del. 1985) (finding consent to search was withdrawn by the suspect's refusal to provide the officers with the keys to his locked residence and his statement, "If you want to go in there, kick the door in"). For example, voluntary consent to search was not withdrawn where a suspect hesitated before silently acceding to the officer's request to continue the search. Baxter v. State, 77 P.3d 19, 25 (Alaska App. 2003). In this case, Sanders knowingly and voluntarily consented to a search of his motel room and of his person. During the search of his person, Sanders did not attempt to move away from Abodeely, Nease v. State, 484 So. 2d 67, 69 (Fla. Dist. Ct. App. 1986), did not grab Abodeely's hands in an attempt to stop the search, Jimenez v. State, 643 So. 2d 70, 72 (Fla. Dist. Ct. App. 1994), and did not reach into his pockets to purposely obstruct the search, Lowery v. State, 894 So. 2d 1032, 1034 (Fla. Dist. Ct. App. 2005).

A suspect's actions in relation to a search are particularly ambiguous when accompanied by continued compliance with an officer's requests. For example, in State v. Mattison, 575 S.E.2d 852 (S.C. App. 2003), a suspect who dropped his arms to his waist during an attempted search of the area around his waistband did not effectively withdraw his consent because he repeatedly complied with the officer's request to put his hands back on the hood of a car. Id. at 857 ("We find Mattison's act of lowering his hands falls far short of an unequivocal act or statement of withdrawal, something found in most withdrawal of consent cases."). As the arresting officer in Mattison testified,

> When I got around to the waistband area, [Mattison] kept, in a nervous manner, reaching his hands back down, which led [to] more suspicion that there might be something down there. He kept putting them down. I told him several times, 'Keep your hands on the hood or on the trunk.' He complied. He was very cooperative.

Id. at 854. Similarly, the act of placing his hand in his pocket and turning away from the officer during the course of a consensual search of his person was ambiguous in light of a suspect's immediate compliance with a request to remove his hand from his pocket. Burton, 657 A.2d at 748. Nowhere in the record is there any support for Sanders's assertion on appeal that he "repeatedly pushed [Abodeely's] hand away." Instead, the record clearly shows that Sanders lowered his arms some distance approximately five times, that this caused Abodeely to ask him to raise his arms, and that Sanders did so without comment or hesitation. Like the district court, what I find particularly dispositive in this case is Sanders's repeated cooperation with Abodeely's requests to raise his arms so that the search could continue.

Of course, once consent is given, it can be limited during the course of the search. See United States v. Ho, 94 F.3d 932, 936 n.5 (5th Cir. 1996). While an articulated objection to the continuing search is not necessary, the failure to object verbally bears on a court's consideration of whether the act allegedly withdrawing or limiting consent was unequivocal and unambiguous. Cf. United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986) ("Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent."); McNair v. Commonwealth, 521 S.E.2d 303, 307 (Va. App. 1999) (holding that a suspect's failure to withdraw consent to search for "criminal activity" in his home included the top floor because he did not withdraw his consent to search when he observed the officer go upstairs). Certainly by the fifth time he lowered his arms, Sanders was aware of the scope of the investigator's search. Yet during the course of the entire search, Sanders never articulated anything approximating an objection, and nothing in the record suggests his inability to do so.

The Court relies on the Terry-stop case of United States v. Hanlon for the proposition that when "an officer seizes an item of contraband from an individual's person after having concluded that no weapons are present, the evidence will be suppressed." 401 F.3d 926, 929 (8th Cir. 2005) (affirming the district court's conclusion that the officer had reasonable suspicion to subject the defendant to a pat-

down search for weapons following a traffic stop). However, we need only reach our Terry-stop jurisprudence if Sanders unequivocally withdrew his consent or if his consent was effectively withdrawn when Abodeely placed him in restraints. With respect to the former, as discussed above, the district court did not clearly err. With respect to the latter, placing a suspect in custody as a safety precaution during the course of a consensual search does not, by itself, operate to end a suspect's consent. See State v. Watson, 864 A.2d 1095, 1099 (N.H. 2004) (contrasting a valid search where a suspect is restrained after giving consent with an invalid search where a suspect gives consent after being restrained). For example, in Mattison, the officer properly placed the suspect in handcuffs as a safety precaution after the suspect impeded a consensual search by repeatedly lowering his arms and then returning them to the hood of a vehicle upon request. 575 S.E.2d at 854. Similarly, the Ninth Circuit upheld a consensual search where airport drug investigators placed a suspect in handcuffs while they searched his luggage. United States v. Brown, 884 F.2d 1309, 1310-11 (9th Cir. 1989).

Sanders's erratic behavior as Abodeely was about to discover the contraband indicated that safety precautions might be necessary. After placing Sanders in handcuffs, Abodeely explained to Sanders that he was not under arrest but was placed in restraints as a safety precaution. Sanders then complied with Abodeely's request, thereby allowing the search to continue. See United States v. Hurst, 228 F.3d 751, 758 n.3 (6th Cir. 2000) (resisting handcuffs and attempting to flee from the scene was too ambiguous to imply unequivocal withdrawal of consent). At no point, either before or after being placed in handcuffs, did Sanders state that he wanted to withdraw his consent or limit the scope of the search. Indeed, based on the complete record, a reasonable observer could easily infer that Abodeely was momentarily prevented from continuing the search only by his desire to maintain control over the situation and to ensure the safety of all parties.

## IV

To overturn the district court, we must be immediately struck and firmly convinced of the district court's clear error in failing to find that the act of lowering his arms, without anything more, constitutes an unambiguous and unequivocal withdrawal of consent. The district court found that Sanders did not unequivocally withdraw consent. After thoroughly reviewing all the evidence, I do not believe that the district court's finding is based on an impermissible view of the evidence. Tucker, 243 F.3d at 506 (recognizing that the Court may not reverse the district court's choice from two permissible views of the evidence). I grant that this case might be close for a fact-finder, but close calls are not appropriate for finding clear error. See United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001) (affirming the district court's finding that the defendant consented to a search by simply lowering his arms even though the Court would have reached a different conclusion if it were the finder of fact). Based on all the evidence adduced at the suppression hearing and the weight of Fourth Amendment case law, I would hold that the district court's finding that Sanders did not unequivocally withdraw consent is not clearly erroneous.

For these reasons, I would affirm the district court's denial of Sanders's motion to suppress evidence. Accordingly, I respectfully dissent.

_____