SHIRLEY S. ABRAHAMSON, C.J.
¶ 49. (dissenting). The majority opinion repeatedly proclaims that the driver of the car (the defendant's brother) validly consented to the law enforcement officer's search of the motor vehicle and all containers in the vehicle, including the defendant's briefcase.[1]
¶ 50. The majority opinion maintains that the instant case is not one addressing "whether initial consent was valid." Majority op., ¶ 32. Rather, the majority opinion addresses whether the defendant effectively revoked the driver's valid consent to search the briefcase.[2]
¶ 51. The State, the defendant, Justice Prosser, and I disagree with the majority opinion's view of the issue presented. I join Justice Prosser's dissent.
¶ 52. We understand the issue to be whether the driver's consent to the search of the vehicle, including a *159 consent to search the containers and briefcase therein, was valid after it became clear to law enforcement that the driver did not own the briefcase. The driver's initial consent to search the vehicle may have appeared as valid consent to search any container or briefcase in the vehicle. But the issue in the instant case is whether facts coming to light during the search should have caused a reasonable person to doubt the validity of the consent to a search of the briefcase, that is, should have caused a reasonable person to have doubted the authority of the driver to consent to a search of the briefcase.[3]
¶ 53. The warrant requirement of the United States and Wisconsin Constitutions does not apply when a party consents to a search,[4] when a third party with common control over the searched premises consents,[5] or when an individual with apparent authority to consent does so.[6]
¶ 54. "When police are relying upon consent as the basis for their warrantless search, they have no more authority than they have apparently been given by the consent. . . . But, the question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer. . .. [T]he standard is 'that of "objective" reasonableness . .. .' "[7]
¶ 55. Although the driver in the present case appeared to have the authority to consent to a search of the vehicle and its contents, the defendant's claim of *160 ownership of the briefcase put the officer on notice that someone other than the driver might have authority over the briefcase. When circumstances suggest that the property to be searched belongs to someone other than the consenting person, the validity of the consenting person's consent becomes questionable, even if the consent was voluntarily given.
¶ 56. As the State's brief correctly explains, "it is the sufficiency of the consenting individual's relationship to the premises to be searched [ ] that the State must establish."[8] The test is whether a reasonable officer would believe under the totality of the circumstances that the consenter had authority to consent to the search:
The crux of this case is what a reasonable [law enforcement officer] would believe, under the totality of the circumstances, about who had apparent authority over the briefcase at the time [the defendant] made his warrant remark. Consent (and by extension, revocation or limitation of that consent) requires authority to consent in the first instance.[9]
¶ 57. The State has the burden in the present case to prove by clear and convincing evidence that a reasonable law enforcement officer would believe, under the totality of the circumstances, that the driver had authority to consent to the search of the briefcase.[10]
*161 ¶ 58. I address three issues:
• First, whether a reasonable law enforcement officer would believe, under the totality of the circumstances, that the driver had authority to consent to the search of the briefcase;
• Second, whether the law enforcement officer's erroneous assertion of authority to search the laptop in the briefcase undermined the defendant's authority to withdraw or limit the driver's consent;
• Third, what the standard is for determining whether a person withdraws, limits, or revokes consent.
¶ 59. I conclude that the State did not meet its burden to prove that a reasonable law enforcement officer would believe, under the totality of the circumstances of the instant case, that the driver had authority to consent to the search of the briefcase. Accordingly, I dissent.
I
¶ 60. The validity of the driver's consent to the law enforcement officer's search of the briefcase turns on whether the driver had apparent authority to consent to the search of the briefcase, as I have previously stated. Neither party claims that the driver had actual authority to consent to the search of the briefcase.
¶ 61. I conclude that under the totality of the circumstances in the present case, a law enforcement officer could not reasonably believe that the driver had apparent authority to consent to a search of the brief *162 case. Gauging the objective reasonableness of a law enforcement officer's actions is a particularly fact-sensitive inquiry.[11]
¶ 62. The majority opinion limits its inquiry to the statement, "Got a warrant for that?" but the totality of the circumstances is more than this statement
¶ 63. The defendant asserted his claim of ownership over the briefcase as follows:
DEPUTY: What's in the briefcase?
DEFENDANT: A laptop. Uh, got a warrant for that?
[At this point, the deputy has unlatched and begun opening the briefcase.]
DEPUTY: I can open up the, uh, laptop.
DEFENDANT: Yeah, it's a laptop, Visine, acid reflux... .
¶ 64. The facts available to the officer at the time of the search of the briefcase include the following:
• The consenting driver did not own the vehicle;
• The consenting driver advised the officer that some property in the vehicle (such as tools) belonged to the defendant;
• When the officer asked what was in the briefcase, the defendant answered, not the driver;
• When the officer asked what was in the briefcase, the defendant correctly identified the contents, while the driver was silent about the contents of the briefcase;
*163 • When the officer asked what was in the briefcase, the defendant asked if the officer had a warrant;
• The officer cut off any further inquiry by opening the briefcase and erroneously declared: "I can open the laptop."
¶ 65. The communications between the law enforcement officer and the defendant revealed that the briefcase was the defendant's, not the driver's. The totality of the circumstances demonstrates that the defendant signaled his ownership of the briefcase. Consequently, the validity of the driver's authority to consent to the search of the defendant's briefcase was questionable. The officer's reliance on the driver's authority over the briefcase was not objectively reasonable.
¶ 66. A law enforcement officer can assume that an officer has authority to perform a search only if "the facts available to the officer . .. warrant a [person] of reasonable caution in the belief that the consenting party had authority over the premises."[12] If a reasonable person would doubt that the consenting person had authority over the property, the officer must make further inquiry to determine whether the person has authority to consent to the search.[13] The officer "may not always take [a person's] consent to a search at face value, but must consider the surrounding circumstances. That consideration often demands further inquiry."[14]
¶ 67. Professor LaFave explains that a contrary rule would undermine the purposes of the objective test *164 of the totality of the circumstances to determine authority. It would, according to Professor LaFave, "make no sense whatsoever" to ignore facts discovered during a search to affect the authority of a consenter; doing so would "permit police simply to ignore all facts coming to light during the search that should cause a reasonable person to doubt the soundness of the previous conclusion that the consenting person has authority to allow the ongoing search."[15]
¶ 68. We have explicitly adopted this approach in State v. Kieffer, 217 Wis. 2d 531, 577 N.W.2d 352 (1998). In Kieffer, law enforcement officers obtained the consent of a homeowner who appeared. to have shared authority over a lofted garage apartment. During their investigation, however, the officers learned facts that led them to doubt that the homeowner had authority to consent to a search of the lofted garage space.
¶ 69. The Kieffer court held that once a reasonable person would have reason to doubt the authority of the consenting party, the officers could not rely on the consenting party's apparent authority; the officers were obligated to ask additional clarifying questions.[16]
¶ 70. The majority opinion does not cite Kieffer. Instead, the majority opinion relies on United States v. Melgar, 227 F.3d 1038 (7th Cir. 2000), to support its assertion that law enforcement officers need not ask any clarifying questions when confronted with a non-consenting defendant claiming ownership or asking for a warrant.
*165 ¶ 71. Melgar is inapposite. Unlike the defendant in Melgar, the defendant in the instant case demonstrated his ownership of the property contemporaneously with the search and challenged the officer's search.
¶ 72. In Melgar, law enforcement officers had consent to search a hotel room from the renter of the room and all the occupants of the room. After all of the people had left the hotel room, the officers searched the room and found a purse in the bed, between the mattress and box spring. The purse had no personalized markings on the outside. The officers had no explicit permission from anyone to search the purse. They had no clue about who owned the purse.[17]
¶ 73. In Melgar, the police lacked "reliable information that the container [was] not under the authorizer's control." Melgar, 227 F.3d at 1041 (cited by majority op., ¶ 46). The Seventh Circuit Court of Appeals reasoned in Melgar that "if the police do not have reliable information that the container is not under the authorizer's control," the police do not need to ascertain the identity of a container's owner prior to searching it.[18]
¶ 74. In the instant case, unlike in Melgar, the totality of the circumstances exposed reliable information that the briefcase was not under the consenting driver's (the authorizer's) control.
¶ 75. According to the majority opinion, however, "[o]nce valid consent for a search has been secured, law enforcement officers are not required to halt their search and question whether consent is still valid every *166 time a person makes an ambiguous statement regarding the ownership of an item that is otherwise within the scope of that consent." Majority op., ¶ 47.
¶ 76. The majority opinion asserts that requiring inquiry into the scope of the consenter's authority "would place an onerous and unreasonable burden on law enforcement, particularly given that the true owner of the property may or may not be present." Majority op., ¶ 47.
¶ 77. That is not what our court stated in Kieffer. Indeed, requiring law enforcement officers to evaluate evolving circumstances is inherent in many search and seizure contexts.
¶ 78. As part of the objective analysis of a consenter's authority, courts regularly require law enforcement to evaluate and inquire into the consenter's authority in kaleidoscopic circumstances. For example, the court asks that officers determine whether a minor answering a door has authority under the circumstances to consent to a search of a house when the owner is not present;[19] whether a houseguest has authority under the circumstances to consent to a search of the contents of a computer without the owner being present;[20] and whether a landlord has authority under the circumstances to consent to a search of a tenant's bedroom.[21]
¶ 79. The totality of the circumstances in the present case should have indicated to an objective police officer that the driver did not have authority to consent *167 to the search of the defendant's briefcase. Thus, the officer could not rely on the driver's consent to the search of the car or containers therein to be a valid consent to the search of the briefcase.
II
¶ 80. The majority opinion ignores the officer's erroneous assertion of authority that he could "open up the laptop," meaning he could open the briefcase including the laptop. Yet "one factor very likely to produce a finding of no consent... is an express or implied false claim by the police that they can immediately proceed to make the search in any event."[22]
¶ 81. The officer, upon being confronted by the defendant's challenge, "Got a warrant for that?" falsely invoked the power of the law to justify opening of the briefcase. See Justice Prosser's dissent, ¶¶ 120-121.
¶ 82. By asserting his authority during the defendant's objection to the search, the officer made the driver's consent appear irrevocable. The officer cut off the defendant's opportunity to refuse to give his consent. "When a law enforcement officer claims authority to search ..., he announces in effect that the occupant has no right to resist the search."[23] The officer undermined the principle that a person can refuse, revoke, withdraw, or limit consent.
¶ 83. The majority opinion ignores the officer's false claim of legal authority entirely and permits the law enforcement officer under false claim of legal authority to cut off any possibility of the defendant's objection to a search. This result cannot be correct *168 when the law requires consent to be freely and voluntarily given to a warrantless search. State v. Artic, 2010 WI 83, ¶ 32, 327 Wis. 2d 392, 786 N.W.2d 430.
Ill
¶ 84. Because the totality of the circumstances is such that a reasonable officer was not entitled to believe that the driver had authority to consent to the search of the briefcase, the question of how consent is to be revoked, withdrawn, or limited need not be addressed.
¶ 85. I write on this issue, however, to make clear that I do not agree with the majority opinion's requirement that a defendant must make an "unequivocal" statement to revoke, withdraw, or limit consent.
¶ 86. As the majority opinion rightly notes, "[withdrawal of consent need not be effectuated through particular 'magic words,. .. ."[24]
¶ 87. Nevertheless, the majority opinion adopts a rule similar to that used in determining an accused's invocation during interrogation of the right to an attorney or the right to remain silent. See Davis v. United States, 512 U.S. 452 (1994).
¶ 88. The Davis "unequivocal" or "unambiguous" rule has been heavily criticized on a number of grounds, including that the "unequivocal" test invites equivocation on the part of courts — identical statements may appear "unequivocal" to one court may be "equivocal" to another.[25]
*169 ¶ 89. As Justice Sotomayor noted in her dissent in Berghuis v. Thompkins, 560 U.S. 370, 408-12 (2010), the "unequivocal" or "unambiguous" test has limited practical value and erodes the protections that defendants receive under Miranda. The dissent explains that "ample evidence has accrued that criminal suspects often use equivocal or colloquial language in attempting to invoke their right to silence" and that courts imposing a clear-statement requirement "have rejected as ambiguous an array of statements whose meaning might otherwise be thought plain."[26]
¶ 90. I acknowledge that courts in other jurisdictions have adopted this "unequivocal" test in the context of revocation, withdrawal, or limitation of consent.[27] I am not persuaded that different tests should be applied to whether consent was granted and whether consent was revoked, withdrawn, or limited. I conclude that the same test should apply to both instances.
¶ 91. The "unequivocal" test results in an additional and unnecessary layer of complexity to an area of law requiring clarity.[28]
*170 ¶ 92. By using its flawed "unequivocal" test, the majority opinion bends a defendant's statement that a reasonable person would construe as an objection into mere equivocation and erroneously places the burden on the defendant to prove the unreasonableness of the search.
¶ 93. For the reasons set forth, I would reverse the decision of the court of appeals and hold that the circuit court erred in denying the defendant's motion to suppress.
¶ 94. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 Majority op., ¶¶ 24, 30, 33, 35-36, 39, 47.

 See majority op., ¶ 25.

 See 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.3(g), at 245 (5th ed. 2012).

 Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

 Florida v. Jimeno, 500 U.S. 248 (1991).

 Illinois v. Rodriguez, 497 U.S. 177 (1990).

 4 LaFave, supra note 3, § 8.1(c), at 22-23 (quoted source omitted, emphasis in original).

 State v. Kieffer, 217 Wis. 2d 531, 542, 577 N.W.2d 352 (1998).

 Brief of the Plaintiff-Respondent at 5 (second emphasis added). See also Justice Prosser's dissent, ¶ 114 ("The question is whether his consent to search the vehicle not only covered a closed container within the vehicle, but also remained valid after his non-ownership of the closed container became clear .. . .").

 Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

 See Missouri v. McNeely, _ U.S. _, 133 S. Ct. 1552, 1564 (2013) (describing "totality of the circumstances" tests as "fact-intensive").

 Rodriguez, 497 U.S. at 188 (internal quotation marks and citation omitted).

 See Kieffer, 217 Wis. 2d at 548.

 Id. at 549.

 4 LaFave, supra note 3, § 8.3(g), at 245.

 "[T]h.e surrounding circumstances could conceivably be such that a reasonable person would doubt [the] truth [of the consent] and not act upon it without further inquiry." Rodriguez, 497 U.S. at 188.

 United States v. Melgar, 227 F.3d 1038, 1039-40 (7th Cir. 2000).

 Id. at 1041 (emphasis added).

 State v. Tomlinson, 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367.

 State v. Sobczak, 2013 WI 52, 347 Wis. 2d 724, 833 N.W.2d 59.

 State v. St. Germaine, 2007 WI App 214, 305 Wis. 2d 511, 740 N.W.2d 148.

 4 LaFave, supra note 3, § 8.2(a), at 71 (citations and footnotes omitted).

 Bumper v. North Carolina, 391 U.S. 543, 550 (1968).

 Majority op., ¶ 33 (quoting United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005)).

 Compare United States v. Martin, 664 F.3d 684 (7th Cir. 2011) (invocation was unequivocal when defendant said "I'd rather talk to an attorney first before I do that") with Delashmit v. State, 991 So. 2d 1215 (Miss. 2008) (invocation was equivocal *169 when defendant said "I prefer a lawyer"). Compare also Wood v. Ercole, 644 F.3d 83 (2d Cir. 2011) (invocation was unequivocal when defendant said "I think I should get a lawyer") with Commonwealth v. Morganti, 917 N.E.2d 191 (Mass. 2009) (invocation was equivocal when defendant said he was "thinking I might need a lawyer and want to talk to him before talking to you").

 Thompkins, 560 U.S. at 410-11 (Sotomayor, J., dissenting).

 See, e.g., United States v. Stabile, 633 F.3d 219 (3d Cir. 2011); United States v. Sanders, 424 F.3d 768 (8th Cir. 2005); State v. Smith, 782 N.W.2d 913 (Neb. 2010); State v. Watson, 864 A.2d 1095 (N.H. 2004).

 State v. Williams, 2012 WI 59, ¶ 25, 341 Wis. 2d 191, 814 N.W.2d 460.