# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP304-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Gerald P. Mitchell, |
| | Defendant-Appellant. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 3, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 11, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Sheboygan |
| JUDGE: | Terence T. Bourke |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | KELLY, J., concurs, joined by R.G. BRADLEY, J. (opinion filed). |
| DISSENTED: | A.W. BRADLEY, J., dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant, there were briefs filed by *Linda J. Schaefer* and *Schaefer Law Firm, S.C.*, Sturgeon Bay. There was an oral argument by *Linda J. Schaefer*.

For the plaintiff-respondent, there was a brief filed by *Ryan J. Walsh*, chief deputy solicitor general, with whom on the brief were *Brad D. Schimel*, attorney general, and *David H. Perlman*, assistant attorney general. There was an oral argument by *Ryan J. Walsh*, chief deputy solicitor general.

An amicus curiae brief was filed on behalf of Mothers Against Drunk Driving by *Kevin M. St. John* and *Bell Giftos St.*

*John*, *LLC*, Madison, with whom on the brief was *Theane D. Evangelis*, *Lauren M. Blas*, and *Gibson*, *Dunn & Crutcher*, *LLP*, Los Angeles, California.  There an oral argument by *Lauren M. Blas*.

**2018 WI 84**

No. 2015AP304-CR
(L.C. No. 2013CF365)

STATE OF WISCONSIN       :       IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin,**

      **Plaintiff-Respondent,**

      **v.**

**Gerald P. Mitchell,**

      **Defendant-Appellant.**

**FILED**

**JUL 3, 2018**

Sheila T. Reiff
Clerk of Supreme Court

Appeal from a judgment of the Circuit Court. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. This appeal is before us on certification from the court of appeals.

¶2 Gerald Mitchell was convicted of operating while intoxicated and with a prohibited alcohol concentration, based on the test of blood drawn without a warrant while he was unconscious, pursuant to Wis. Stat. § 343.305(3)(b) (2013–14).[1] Mitchell contends that the blood draw was a search conducted in violation of his Fourth Amendment rights.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

¶3 We conclude that Mitchell voluntarily consented to a blood draw by his conduct of driving on Wisconsin's roads and drinking to a point evidencing probable cause of intoxication. Further, through drinking to the point of unconsciousness, Mitchell forfeited all opportunity, including the statutory opportunity under Wis. Stat. § 343.305(4), to withdraw his consent previously given; and therefore, § 343.305(3)(b) applied, which under the totality of circumstances herein presented reasonably permitted drawing Mitchell's blood. Accordingly, we affirm Mitchell's convictions.

## I. BACKGROUND

¶4 On the afternoon of May 30, 2013, officers from the City of Sheboygan Police Department were dispatched in response to a report that the caller had seen Mitchell, who appeared intoxicated, get into a gray van and drive away. Between 30 and 45 minutes later, Officer Alex Jaeger made contact with Mitchell. He found Mitchell walking near a beach. Mitchell was wet, shirtless and covered in sand. Mitchell's speech was slurred and he had difficulty maintaining his balance.

¶5 Mitchell admitted to Jaeger that he had been drinking prior to driving and that he continued drinking at the beach. He also stated that he had parked his vehicle "because he felt he was too drunk to drive." Nearby, officers found the gray van Mitchell was reported to have been driving.

¶6 After observing Mitchell's physical condition, Jaeger believed that it would not be safe to conduct standard field sobriety tests. Instead, he administered a preliminary breath

2

test, which indicated a blood alcohol concentration (BAC) of 0.24.[2] Jaeger then arrested Mitchell for operating while intoxicated.

¶7 Following his arrest, and during the drive to the police station, Mitchell's physical condition deteriorated and his demeanor became more "lethargic." Upon arrival at the police station, it became apparent that an evidentiary breath test would not be feasible. Instead, Jaeger opted to transport Mitchell to a nearby hospital for a blood draw.

¶8 During the approximately eight-minute drive to the hospital, Mitchell "appeared to be completely incapacitated, [and] would not wake up with any type of stimulation." Upon arriving at the hospital, Mitchell needed to be transported in a wheelchair where he sat "slumped over" and unable to maintain an upright seating position.

¶9 After Mitchell entered the hospital emergency room, Jaeger read Mitchell the Informing the Accused form, thereby reading Mitchell the statutory opportunity to withdraw his consent to a blood draw. However, Mitchell was "so incapacitated [that] he could not answer." Jaeger directed hospital staff to draw a sample of Mitchell's blood.[3] They did so. Mitchell did not awaken during the procedure.

---

[2] Preliminary breath tests are not sufficient evidence to prove prohibited alcohol concentrations at trial. Wis. Stat. § 343.303.

[3] There was no warrant sought prior to drawing Mitchell's blood.

¶10 The blood draw occurred approximately one hour following Mitchell's arrest. The analysis of his blood sample showed a BAC of 0.222.

¶11 Mitchell was subsequently charged with driving with a prohibited alcohol concentration (PAC), as well as operating a motor vehicle while intoxicated (OWI), as a 7th offense. Prior to trial, Mitchell moved to suppress the results of the blood test. He alleged that the warrantless blood draw violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.

¶12 In response to Mitchell's motion, the State contended that he had consented to the blood draw when he drove his van on Wisconsin highways according to a subsection of Wisconsin's implied-consent law, Wis. Stat. § 343.305(2). The State also contended that as an unconscious person, he is presumed not to have withdrawn his consent, pursuant to § 343.305(3)(b). The State expressly stated that it was not relying on exigent circumstances to justify the blood draw.

¶13 The circuit court[4] denied Mitchell's suppression motion in reliance on Wis. Stat. § 343.305(3)(b). The circuit court concluded that the officer had probable cause to believe that Mitchell was driving while intoxicated, and therefore, the blood

---

[4] The Honorable Terence T. Bourke of Sheboygan County presided.

4

draw was lawful. A jury convicted Mitchell of the OWI and PAC charges.

¶14 Mitchell appealed his conviction based on the sole contention that the warrantless blood draw violated his Fourth Amendment right to be free from "unreasonable searches and seizures."

¶15 The court of appeals, noting the opportunity to clarify the law in light of our recent decision in State v. Howes, 2017 WI 18, 373 Wis. 2d 468, 893 N.W.2d 812,[5] certified the following questions: (1) whether "implied-consent," the potential for which is described in Wis. Stat. §§ 343.305(2) & (3)(a), which arises through a driver's voluntary conduct in operating a vehicle on Wisconsin roadways after drinking to intoxication, is constitutionally sufficient consent, and (2) whether a warrantless blood draw from an unconscious person pursuant to Wis. Stat. § 343.305(3)(b) violates the Fourth Amendment.

---

[5] The court of appeals, noting that two of its prior cases had reached opposite conclusions, asked us to clarify whether implied consent is equivalent to constitutionally sufficient consent. Compare State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867 (holding that implied consent is not constitutionally sufficient consent), with State v. Wintlend, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745 (holding that implied consent is constitutionally sufficient). See also Cook v. Cook, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (concluding that the court of appeals does not have the power to overrule or modify one of its published opinions).

## II. DISCUSSION

### A. Standard of Review

¶16 Whether a suppression motion was properly denied presents a question of constitutional fact. Howes, 373 Wis. 2d 468, ¶17 (citing State v. Tullberg, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120). We will not set aside a circuit court's findings of historical fact unless they are clearly erroneous. State v. Brereton, 2013 WI 17, ¶17, 345 Wis. 2d 563, 826 N.W.2d 369. However, the application of those facts to Fourth Amendment principles presents a question of law that we review independently. Id.

### B. Fourth Amendment General Principles

¶17 The Fourth Amendment to the United States Constitution, and its Wisconsin counterpart, Article I, Section 11 of the Wisconsin Constitution,[6] protect persons' rights to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; Wis. Const. art. I, § 11. "As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." Riley v. California, 573 U.S. ___, 134 S. Ct. 2473, 2482 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). As a result, the Fourth Amendment does not prohibit all searches undertaken by government actors, but "merely proscribes those

---

[6] "Historically, we have interpreted Article I, Section 11 of the Wisconsin Constitution in accord with the Supreme Court's interpretation of the Fourth Amendment." State v. Arias, 2008 WI 84, ¶20, 311 Wis. 2d 358, 752 N.W.2d 748.

which are unreasonable." Howes, 373 Wis. 2d 468, ¶21 (quoting Tullberg, 359 Wis. 2d 421, ¶29 (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991))).

¶18 Drawing blood is a search of the person. Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160, 2173 (2016) (stating that "our cases establish that the taking of a blood sample or the administration of a breath test is a search"); Howes, 373 Wis. 2d 468, ¶20 (concluding that a blood draw is a search). Furthermore, a warrantless search is "presumptively unreasonable." State v. Brar, 2017 WI 73, ¶16, 376 Wis. 2d 685, 898 N.W.2d 499 (quoting Tullberg, 359 Wis. 2d 421, ¶30).

¶19 However, "there are certain 'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement." Brar, 376 Wis. 2d 685, ¶16 (quoting State v. Williams, 2002 WI 94, ¶18, 255 Wis. 2d 1, 646 N.W.2d 834). One such exception is a search conducted pursuant to consent. Brar, 376 Wis. 2d 685, ¶16. Warrantless consent searches are reasonable; and therefore, they are consistent with the Fourth Amendment. Fernandez v. California, 571 U.S. 292, 134 S. Ct. 1126, 1137 (2014); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

### C. Consent

¶20 In determining whether consent was given, we employ a two-step process. First, we examine whether relevant words, gestures or conduct supports a finding of consent. State v. Artic, 2010 WI 83, ¶30, 327 Wis. 2d 392, 786 N.W.2d 430.

Second, we examine whether the consent was voluntarily given. Id.

### 1. Implied Consent

¶21 As we have explained, consent to search need not be given verbally. State v. Phillips, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998) (citing United States v. Griffin, 530 F.2d 739, 741 (7th Cir. 1976); United States v. Donlon, 909 F.2d 650, 652 (1st Cir. 1990) invalidated on other grounds by United States v. Omar, 104 F.3d 519 (1st Cir. 1997)). Consent given through conduct "provides a sufficient basis on which to find that the defendant consented to the search." Phillips, 218 Wis. 2d at 197 (concluding that defendant's affirmative assistance in the search of his bedroom demonstrated his consent to the search). "Through conduct, an individual may impliedly consent to be searched." Brar, 376 Wis. 2d 685, ¶17.

¶22 In addition, the United States Supreme Court has recently explained that consent also may be shown by the context in which consent arises. Birchfield, 136 S. Ct. at 2185. In Birchfield, the Court said that "[i]t is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context." Id. (internal citations omitted). The Court's connection between context and consent was made in the course of Birchfield's review of searches incident to arrest for OWI in states that have implied-consent laws. Birchfield cited two cases that demonstrated constitutionally sufficient consent because of the context in

8

which consent was lawfully implied: <u>Florida v. Jardines</u>, 569 U.S. 1 (2013) and <u>Marshall v. Barlow's, Inc.</u>, 436 U.S. 307 (1978).

¶23 In <u>Jardines</u>, the Court, through Justice Scalia, recognized the sanctity of the home and that at the "very core" of the Fourth Amendment "stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion,'" and that this right extended to the curtilage of the home, including the home's front porch. <u>Jardines</u>, 569 U.S. at 6-7 (quoting <u>Silverman v. United States</u>, 365 U.S. 505, 511 (1961)).

¶24 However, the Supreme Court also said that the sanctity of the curtilage of one's home is not absolute and certain permissions to enter may be implied. <u>Jardines</u>, 569 U.S. at 8. In <u>Jardines</u>, the Court recognized that by putting a knocker on his door, the homeowner had given implicit consent for visitors to approach and said that the implicit granting of such permission "does not require fine-grained legal knowledge." <u>Id.</u> Rather, law enforcement could approach a homeowner's front door "precisely because that is 'no more than any private citizen might do.'" <u>Id.</u> (quoting <u>Kentucky v. King</u>, 563 U.S. 452, 469 (2011)). The Court recognized that a homeowner who places a knocker on his front door impliedly invites visitors to approach and enter upon the home's curtilage. <u>Jardines</u>, 569 U.S. at 8. Stated otherwise, in the context established by the homeowner, consent to enter the curtilage and approach the front door was given.

¶25 The other decision referenced in Birchfield, Marshall v. Barlow's, Inc., noted that while generally the Fourth Amendment prohibits searches without a warrant, certain businesses and industries are subject to exception. Marshall, 436 U.S. at 313. Indeed, "pervasively regulated business[es]" and "'closely regulated' industries 'long subject to close supervision and inspection,'" are subject to warrant exceptions for certain searches. Id. (quoting Colonnade Catering Corp. v. United States, 397 U.S. 72, 73-75, 77 (1970) (wherein the Court held that the statutory right to enter and inspect a facility authorized to serve liquor required no warrant for the search).

¶26 The Fourth Amendment exception upheld in Colonnade was grounded in "unique circumstances" in that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy, could exist for a proprietor over the stock of such an enterprise." Marshall, 436 U.S. at 313 (internal citation omitted). Referring to the liquor and firearms industries, the Court said that "when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation." Id. According to the Court, businesses in these industries are part of "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." Id. By choosing to participate in certain businesses, the Court concluded that those persons had "accept[ed] the burdens as well as the benefits of their trade," in a manner different from other businesses and thus "in effect

10

consents to the restrictions placed upon him." Id. Once again, it was the context in which such businesses are operated that evidenced voluntary consent to be subjected to significant governmental regulation. Stated otherwise, the context in which one operates a business involved in alcohol or firearms had a well-known history of significant governmental regulation such that an owner of such a business would have no reasonable expectation of privacy from governmental oversight of his business. Id.

¶27 Birchfield's discussion of the relationship between context and consent instructs that context is part of the totality of circumstances that courts should review when consent to search is at issue. In regard to the context of highway regulation, we note that the statutes at issue here are the legislature's attempt to stop the injuries and deaths drunken drivers inflict year after year on others who use Wisconsin highways.[7] That drunken driving has resulted in and necessarily increased state regulation of the privilege of driving on public roadways is well known. Therefore, the context of well-publicized regulations forms part of the totality of circumstances we examine to determine whether a driver who has been arrested for OWI consented to be searched.

---

[7] The same is true across the nation. For example, it has been reported that in 2016 drunken driving took one life every 50 minutes in the United States. See National Highway Traffic Safety Administration, Drunk Driving, https://www.nhtsa.gov/risky-driving/drunk-driving (last visited June 25, 2018).

¶28 Some of the regulations to which drivers consent have never been challenged. For example, they agree to drive on the right side of the road, Wis. Stat. § 346.05; to yield the right-of-way to emergency vehicles, Wis. Stat. § 346.19; to comply with posted speed limits, Wis. Stat. § 346.57(4); and not to drive with a prohibited blood alcohol concentration, Wis. Stat. § 346.63(1)(b). While these regulations do not have implications for constitutional rights, drivers do not sign a form acknowledging these obligations each time they get into their vehicle; yet, they are held accountable and required to abide by each of them because they chose to drive a vehicle upon public highways.

¶29 Just as Wisconsin drivers consent to the above-listed obligations by their conduct of driving on Wisconsin's roads, in the context of significant, well-publicized laws designed to curb drunken driving, they also consent to an evidentiary drawing of blood upon a showing of probable cause to believe that they operated vehicles while intoxicated.[8] This qualified consent to search is required in order to exercise the privilege of driving in Wisconsin.[9] As <u>Birchfield</u> explained, implied consent laws condition "the privilege of driving on state roads

---

[8] Of course, probable cause to believe that a driver is operating while intoxicated is sufficient to arrest the driver.

[9] Probable cause to believe that a driver operated a vehicle while intoxicated is required before the driver must provide samples of breath, blood or urine. Wis. Stat. §§ 343.305(2) & (3)(a).

12

and [] the privilege would be rescinded if a suspected drunk driver refused to honor that condition." Birchfield, 136 S. Ct. at 2169. Consent is complete at the moment the driver begins to operate a vehicle upon Wisconsin roadways if the driver evidences probable cause to believe that he or she is operating a vehicle while intoxicated. Wis. Stat. §§ 343.305(2) & (3)(a).[10]

¶30 As acknowledged by the United States Supreme Court, driving on state highways is a privilege; it is not a right. Id. In Wisconsin, it is a statutory privilege that comes with

---

[10] The point in time when a driver consents has been described in various ways based on the facts of the case and the arguments of counsel. For example, in Wintlend, 258 Wis. 2d 875, the court of appeals addressed Wintlend's argument that the officer's reading the Informing the Accused form to him coerced consent. Id., ¶8. The court rejected his argument and concluded that the statutory terms chosen by the legislature demonstrated that consent had been given before Wintlend was read the Informing the Accused form. Id., ¶16.

In State v. Neitzel, 95 Wis. 2d 191, 289 N.W.2d 828 (1980), Neitzel's license was suspended for 60 days for his unreasonable refusal to permit chemical testing. Id. at 192. Neitzel argued that the refusal was not unreasonable because he had asked to consult his attorney before deciding and his request was denied. Id. at 193. In dismissing Neitzel's argument, we said that under the circumstances no right to counsel was provided. Id. We also explained that a driver must be arrested before he or she could be asked to submit to chemical testing, but custody at that point did not implicate a right to counsel. Id. at 200. Because the focus in Neitzel was on an alleged right to counsel, our discussion addressed that concern. However, our discussion herein explains why constitutionally sufficient consent occurs when a driver operates a vehicle on Wisconsin's highways and drinks or uses drugs to a point where the driver exhibits probable cause that he or she is intoxicated.

statutory obligations when that privilege is exercised. Steeno v. State, 85 Wis. 2d 663, 671, 271 N.W.2d 396 (1978) ("The granting of an automobile license to operate a motor vehicle is a privilege and not an inherent right.").

¶31 The United States Supreme Court recognized that implied consent laws are the context in which constitutionally sufficient consent for chemical testing may be given when it opined, "our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . . [N]othing we say here should be read to cast doubt on them." Birchfield, 136 S. Ct. at 2185.

¶32 Birchfield also established a "categorical" rule that a breath test does not implicate "significant privacy concerns," and therefore, a warrant is not needed to administer a breath test. Birchfield, 136 S. Ct. at 2176-84. This is an interesting conclusion because of the Court's previous statements that there are no bright-line rules for determining when a warrant is not required. See Missouri v. McNeely, 569 U.S. 141, 158 (2013). It is also interesting because a driver's bodily alcohol concentration can be determined from evidentiary breath tests as well as from blood tests.

¶33 Birchfield went on to explain, "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented

14

by virtue of a decision to drive on public roads." Birchfield, 136 S. Ct. at 2185 (emphasis added). The limit on the consequences of the decision to drive while intoxicated was the imposition of criminal penalties for refusing to permit a blood draw. Id.

¶34 Criminal penalties for withdrawing consent to a blood draw were beyond the scope of implied-consent laws because there was an insufficient nexus between the consequence of criminal penalties and choosing to drive on the highways in those states that imposed criminal penalties for withdrawing consent to provide a blood sample for testing. Id. at 2186. In Wisconsin, the consequences of refusing to permit a blood draw are civil and evidentiary, not criminal. Wis. Stat. § 343.305(4).

¶35 Relevant to assessing future challenges to refusal to submit to a blood draw, the Supreme Court adopted the following standard: motorists are "deemed to have consented to only those conditions that are 'reasonable' in that they have a 'nexus' to the privilege of driving and entail penalties that are proportional to severity of the violation." Id. When applying that standard, the Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense [for refusing to submit]." Id. However, imposing "civil penalties and evidentiary consequences" on motorists who refuse to submit to a blood draw are permissible because civil penalties, such as license revocation, have a nexus to driving. Id. at 2185 (citing McNeely, 569 U.S. at 160-61).

15

¶36 Wisconsin imposes no criminal penalties for withdrawing consent previously given. The only criminal consequence imposed for drunken driving in Wisconsin arises from repeated OWI and PAC convictions and from convictions for causing injury or death by intoxicated use of a vehicle. See generally Wis. Stat. § 346.65. Criminal penalties do not arise from withdrawing consent to blood draws. Wis. Stat. § 343.305(4). All penalties for refusal are administrative and evidentiary. For example, a refusal that leads to a first OWI conviction subjects a defendant to a license suspension and a forfeiture but no jail time. Wis. Stat. §§ 343.305(4) & 346.65(1)(a).

¶37 Accordingly, we confirm that because it is constitutionally permissible to impose civil penalties as a consequence for refusing to submit to a blood draw, as Wis. Stat. § 343.305(4) provides, Wisconsin's implied-consent statutes, §§ 343.305(2) & (3)(a), describe a context consistent with Birchfield where constitutionally sufficient consent to search arises through conduct. Birchfield, 136 S. Ct. at 2185. Stated otherwise, it is not statutes that grant consent to search, but rather, consent is granted by the driver's exercising the privilege of driving on Wisconsin highways when he or she has imbibed sufficient alcohol or drugs to become intoxicated. Furthermore, if the consent that arises when a driver's conduct falls within §§ 343.305(2) & (3)(a) were not constitutionally sufficient consent for a blood draw, there

16

would be no reason to provide a statutory opportunity to withdraw consent under § 343.305(4).

¶38 Furthermore, we presume that drivers know the laws applicable to the roadways on which they drive. State v. Weber, 2016 WI 96, ¶78, 372 Wis. 2d 202, 887 N.W.2d 554 (Kelly, J., concurring). Likewise, we also recognize, as has the United States Supreme Court, that in a state with civil penalties for refusal to submit to a blood draw, "a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test." South Dakota v. Neville, 459 U.S. 553, 560 n.10 (1983).

¶39 In Neville, the Supreme Court examined whether Neville's refusal to submit to a blood-alcohol test could be used as evidence of guilt for drunken driving at his trial. The circuit court of South Dakota had suppressed Neville's refusal to submit to a blood-alcohol test based on the circuit court's conclusion that evidence of refusal violated Neville's federal constitutional rights. Id. at 556. The Supreme Court reversed the suppression because Neville's "right to refuse the blood-alcohol test [] is simply a matter of grace bestowed by the South Dakota legislature," not a constitutional right. Id. at 565. As the Court further explained, because a driver had no constitutional right to refuse a blood-draw when there was probable cause to arrest for OWI, the driver's refusal could be used against him at trial as evidence of guilt. Id.; see also Howes, 373 Wis. 2d 468, ¶62 (Gableman, J., concurring) ("[A]

17

driver has no statutory or constitutional right to refuse [blood alcohol testing] without consequences.").[11]

¶40 Of course, consent voluntarily-given before a blood draw may be withdrawn with or without a statutory reminder. United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005). However, when consent is withdrawn, civil consequences may follow because the opportunity to withdraw voluntarily given consent is not of constitutional significance.  Neville, 459 U.S. at 565; Wis. Stat. § 343.305(4).

¶41 The legitimacy of implied-consent laws has been supported repeatedly by the United States Supreme Court.  In McNeely, the Court stated that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it."  McNeely, 569 U.S. at 160 (quoting Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 451 (1990)). The Court further recognized that "drunk driving continues to exact a terrible toll on our society," and that "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to

---

[11] Justices Shirley Abrahamson, Ann Walsh Bradley, Rebecca Grassl Bradley and Daniel Kelly manufacture a constitutional right to refuse blood-draws to test for blood-alcohol content of drivers who operate vehicles while intoxicated, notwithstanding the United States Supreme Court's clearly stated explanation in South Dakota v. Neville, 459 U.S. 553, 560 n.10, 565 (1983), that drunken drivers have no constitutional right to refuse blood-alcohol testing.  State v. Dalton, 2018 WI 85, ¶61, __ Wis. 2d __, __ N.W.2d (manufacturing a constitutional right for drunken drivers to refuse blood-alcohol testing).

consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." McNeely, 569 U.S. at 160-61.

¶42 Other states are in accord with our conclusion that drivers give constitutionally sufficient consent through driving on state highways and drinking to a point evidencing probable cause of intoxication. For example, the Supreme Court of Colorado held that warrants need not be obtained for unconscious drivers as the result of their previously-given consent under Colorado's "Expressed Consent Statute." People v. Hyde, 393 P.3d 962 (Colo. 2017). The Colorado court recognized that "Hyde's statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement." Id., ¶3. Similarly, the Supreme Court of Kentucky has said that drivers "consent[] to testing by operating a vehicle in Kentucky." Helton v. Commonwealth, 299 S.W.3d 555, 559 (Ky. 2009).

¶43 As judicial opinions of other states, as well as the United States Supreme Court's prior statements show, "[i]mplied consent is not a second-tier form of consent." Brar, 376 Wis. 2d 685, ¶23. Rather, when a driver chooses to operate a vehicle upon Wisconsin's roads, he or she does so charged with knowing the laws of this state. See Byrne v. State, 12 Wis. 577 (*519), 580 (*521) (1860).

¶44 Those laws include Wis. Stat. §§ 343.305(2) & (3)(a) that function together. Section 343.305(2) provides that anyone who "drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or

19

more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of [alcohol or other prohibited substances], when requested to do so by a law enforcement officer." Section 343.305(3)(a) applies when a driver is arrested based on probable cause to believe that he or she is intoxicated, wherein a driver's conduct completes his or her obligation to give samples of breath, blood or urine.

¶45 In the case before us, Mitchell chose to avail himself of the privilege of driving upon Wisconsin's roads. Because he did so while intoxicated, by his conduct he consented to the effect of laws that are relevant to exercising that privilege. He did not need to read them off one-by-one, and then sign a piece of paper acknowledging his consent to be subject to those rules and penalties for failing to follow them. By driving in Wisconsin, Mitchell consented to have samples of his breath, blood or urine taken upon the request of a law enforcement officer who had probable cause to believe he was intoxicated, unless he withdrew such consent. Wis. Stat. §§ 343.305(2) and (3)(a).

### 2. Voluntary Consent

¶46 A determination that consent has been given is not the end of our inquiry, we also must determine whether the consent was given "freely and voluntarily." Artic, 327 Wis. 2d 392, ¶32. "However, the State need not demonstrate that consent was given knowingly or intelligently." Brar, 376 Wis. 2d 685, ¶26 (citing Schneckloth, 412 U.S. at 241 ("Nothing, either in the

20

purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.")). The concept of "'voluntariness' reflects an accommodation of complex, somewhat conflicting values." Artic, 327 Wis. 2d 392, ¶32 (citing Schneckloth, 412 U.S. at 224-25).

¶47 "The test for voluntariness is whether consent to search was given in the absence of duress or coercion, either express or implied." Phillips, 218 Wis. 2d at 197. In evaluating the voluntariness of consent, we evaluate "the totality of all the surrounding circumstances." Artic, 327 Wis. 2d 392, ¶32 (quoting Schneckloth, 412 U.S. at 226). No single criterion controls voluntariness. Phillips, 218 Wis. 2d at 197.

¶48 In making a determination of voluntariness, the State bears the burden to prove by clear and convincing evidence that consent was given voluntarily. Id. Our determination of the voluntariness of consent is a mixed question of fact and law. Id. In addition, voluntariness is a determination that we consider relative to Wis. Stat. §§ 343.305(2) & (3)(a) when a driver commences operation of his or her vehicle on Wisconsin roadways and under § 343.305(3)(b) when an unconscious driver has not availed himself of an opportunity to withdraw consent previously given.

¶49 Consent to search that arises in the context of Wisconsin's implied-consent laws is voluntary in one respect

21

that is similar to the voluntariness of consent in Colonnade because Wisconsin has a long history of close governmental regulation of its highways in regard to drunken drivers.  Stated otherwise, the privilege of driving on Wisconsin highways comes within the context of well-publicized requirements to provide samples of breath, blood or urine to law enforcement who have probable cause to believe that the driver is intoxicated.

¶50 We now further consider voluntary consent under four subsections of Wisconsin's implied-consent law at issue in the case before us:  Wis. Stat. §§ 343.305(2), 343.305(3)(a), 343.305(4) and 343.305(3)(b).[12]

a.  Wisconsin Stat. §§ 343.305(2) & (3)(a)

¶51 The voluntariness of consent by conduct that occurs when a driver commences operation of his vehicle on Wisconsin roadways is unequivocal and constitutionally sufficient when he or she evidences the indicia of intoxication such that there is probable cause to believe he or she is driving under the influence.  Stated otherwise, voluntary consent arises through the effect of a driver's conduct in the context of Wisconsin law, Wis. Stat. §§ 343.305(2) and 343.305(3)(a).

---

[12] We note that other circumstances are impacted by Wisconsin implied consent law that we do not discuss here.  See Wis. Stat. § 343.305(3)(ar)2., causing death or great bodily harm when there is reason to believe the driver violated state or local traffic law.  Here, we limit our discussion to those circumstances where there are no facts in addition to probable cause to believe the driver was intoxicated.

22

¶52 Wisconsin Stat. § 343.305(2) clearly provides, "[a]ny person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances . . . ." A driver's consent is conditioned on probable cause to believe he or she is intoxicated or has caused serious injury or death. As Wis. Stat. § 343.305(3)(a) provides, "Upon arrest of a person for violation of s. 346.63(1) [driving while intoxicated], (2m) [underage drinking], or (5) [commercial driver] or . . . (2) [causing injury] . . . a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine." Therefore, as an initial matter, one consents to search by driving on Wisconsin roadways when one has imbibed sufficient alcohol to support probable cause to arrest. The choice to drive on Wisconsin roadways and the choice to drink or ingest drugs to the point of probable cause to arrest for OWI are voluntary choices.

b. Wisconsin Stat. § 343.305(4)

¶53 Wisconsin Stat. § 343.305(4) provides a statutory opportunity to withdraw consent given under §§ 343.305(2) and (3)(a), when an officer has probable cause to arrest the driver. However, civil penalties may follow when consent is withdrawn. Section 343.305(4) provides in relevant part:

23

You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs . . . or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person . . . .

This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. . . . If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.[13]

It is helpful to keep subsection (4) in mind when discussing Wis. Stat. § 343.305(3)(b), which is central to this appeal.

¶54 Wisconsin Stat. § 343.305(4) provides a statutory opportunity to withdraw consent, even though a driver has operated a vehicle on Wisconsin roads and has imbibed sufficient alcohol to be arrested for OWI. Of course, one may withdraw consent previously given with or without a statutory reminder. See Sanders, 424 F.3d at 774. Nevertheless, a driver may

---

[13] Justices Shirley Abrahamson, Ann Walsh Bradley, Rebecca Grassl Bradley and Daniel Kelly strike down, sub silentio, Wis. Stat. § 343.305(4)'s provision that the fact of refusal can be used against a drunken driver in court because they label refusal of chemical testing a constitutional right. Dalton, __Wis. 2d __, ¶61. However, the United States Supreme Court has concluded that refusing to take a blood test is not of constitutional significance and can be used against the defendant at trial. Neville, 459 U.S. at 565. The majority opinion in Dalton and the separate writings in this case will create confusion in Wisconsin courts on the admissibility of refusal evidence because Neville has not been overruled and remains authoritative on whether refusal is or is not a constitutional right.

24

forfeit the driver's opportunity to withdraw consent by failing to timely engage it.  State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.  Furthermore, a defendant may forfeit an opportunity he or she otherwise would have by his or her conduct.  State v. Anthony, 2015 WI 20, ¶59, 361 Wis. 2d 116, 860 N.W.2d 10.

¶55 Here, Mitchell drank sufficient alcohol to render himself unconscious.  He had a BAC of 0.222.  It is no wonder that he passed out.[14]  Through this conduct, he forfeited all opportunity to withdraw the consent to search that he had given.

c.  Wisconsin Stat. § 343.305(3)(b)

¶56 Mitchell was unconscious when his blood was drawn. Wisconsin Stat. § 343.305(3)(b) addresses blood draws from unconscious persons who have not availed themselves of the statutory opportunity that is provided by § 343.305(4) or otherwise taken steps to withdraw consent.  Some who are unconscious have imbibed sufficient alcohol or drugs to render themselves unconscious; others may be unconscious due to an injury sustained in an accident.  Section 343.305(3)(b) provides in relevant part:

> A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that

---

[14] See National Institute on Alcohol Abuse and Alcoholism, Alcohol Overdose:  The Dangers of Drinking Too Much, https://pubs.niaaa.nih.gov/publications/AlcoholOverdoseFactsheet /Overdosefact.htm (Oct. 2015).

the person has violated s. 346.63(1) [driving while intoxicated], (2m) [underage drinking] or (5) [commercial driver] . . . [or caused injury] one or more samples specified in par. (a) or (am) may be administered to the person.

¶57 The Fourth Amendment question is whether drawing Mitchell's blood while he was unconscious was unreasonable and therefore in violation of Fourth Amendment's prohibitions against unreasonable searches.  Mitchell claims the blood draw was unreasonable because he was unconscious when the Informing the Accused form was read to him.  The State claims that the blood draw was reasonable because Jaeger had arrested Mitchell for driving while intoxicated.[15]

¶58 Mitchell's self-induced physical condition does not render Wis. Stat. § 343.305(3)(b)'s presumption unreasonable under the totality of circumstances applicable to our Fourth

---

[15] The State's contention could be read to assert that the blood draw was a search incident to arrest within the traditional exception to the Fourth Amendment's warrant requirement.

Mitchell's blood draw parallels the search incident to arrest doctrine, as probable cause to arrest Mitchell for driving while intoxicated is fully supported by the record. That a search incident to arrest is an exception to the warrant requirement is an important principle to keep in mind.  This is so because all unconscious drivers are not subjected to a blood draw under Wisconsin implied consent laws.  Only those drivers for whom "a law enforcement officer has probable cause to believe that the person has violated [laws regulating use of intoxicants]" can be searched.  Wis. Stat. § 343.305(3)(b). This limitation also is consistent with the reasonableness requirement of the Fourth Amendment.  For an unconscious driver, a blood draw is the only means by which to obtain evidence of the crime for which he or she has been charged.

Amendment discussion. First, by exercising the privilege of driving on Wisconsin highways, Mitchell's conduct demonstrated consent to provide breath, blood or urine samples to be tested in accord with §§ 343.305(2) & (3)(a) if law enforcement had probable cause to believe that he had operated his vehicle while intoxicated. Second, Jaeger had probable cause to arrest Mitchell for driving while intoxicated. His speech was slurred; he smelled of alcohol; he had difficulty maintaining his balance; his preliminary breath test showed a BAC of 0.24, which indicates significant intoxication. Third, Mitchell chose to drink sufficient alcohol to produce unconsciousness. Fourth, by his conduct, Mitchell forfeited the statutory opportunity to assert that he had "withdrawn consent" he previously gave. Ndina, 315 Wis. 2d 653, ¶29; Anthony, 361 Wis. 2d 116, ¶59.

¶59 Therefore, under the totality of circumstances as applied to Mitchell, Wis. Stat. § 343.305(3)(b)'s presumption is reasonable. Accordingly, drawing Mitchell's blood was reasonable, and no Fourth Amendment violation occurred.

¶60 Because we conclude that consent given by drivers whose conduct falls within the parameters of Wis. Stat. § 343.305 is constitutionally sufficient consent to withstand Fourth Amendment scrutiny, and although consent must be voluntary, it need not be knowing, we overrule State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867. We do so for two reasons. First, we clarify that Padley has no precedential effect because its holding is in direct conflict with an earlier, published court of appeals decision, State v. Wintlend,

27

2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745. Cook v. Cook, 208 Wis. 2d 166, 171, 560 N.W.2d 246 (1997) (concluding that the court of appeals cannot overrule or modify one of its published opinions). Second, Padley is simply wrong as a matter of law. There, the court of appeals said that "implied consent" is different than "actual consent," and that actual consent is given only when a driver affirms his or her previously-given implied consent after being read the Informing the Accused form. See Padley, 354 Wis. 2d 545, ¶38. The court also incorporated the concept of "knowingly" into consent law. Id., ¶62. Under the reasoning in Padley, driving on Wisconsin highways and drinking, using drugs or being involved in an accident causing death or serious bodily injury while violating a state or local traffic law does not provide constitutionally sufficient consent through conduct. We conclude otherwise.

¶61 The question that remains in regard to Mitchell is whether Wis. Stat. § 343.304(3)(b)'s presumption that consent has not been withdrawn is reasonable for a driver who has suffered an injury rendering him or her unconscious, but for whom there is probable cause to believe that he or she operated a vehicle in violation of laws regulating the use of intoxicants.

¶62 We begin by noting that all drivers, by their conduct, consent to provide samples of their breath, blood or urine when requested by law enforcement personnel who have probable cause to arrest for driving while intoxicated. Wis. Stat. §§ 343.305(2) & (3)(a). We also recognize that consent to

search once given may be withdrawn.  See Sanders, 424 F.3d at 774.  Although no magic words are required to withdraw consent, the intent to withdraw must be unequivocal.  Id.  Withdrawal of consent given under implied-consent laws also may be withdrawn. Wisconsin Stat. § 343.305(4) reminds drivers of the opportunity to "withdraw" consent previously given.  See also State v. Arrotta, 339 P.3d 1177, 1178 (Idaho 2014) (concluding that under Idaho implied-consent laws, a suspected drunken driver can withdraw his or her consent to test for the presence of alcohol).  However, for many unconscious drivers, it may be that they have taken no steps to demonstrate unequivocal intent to withdraw consent previously given.

¶63  Furthermore, the opportunity to refuse a blood test when there is probable cause to believe the driver is intoxicated is not of constitutional significance, as is shown by Supreme Court jurisprudence concluding that withdrawal of consent may be used as evidence of guilt at trial.  State v. Crandall, 133 Wis. 2d 251, 255, 394 N.W.2d 905 (1986) (citing Neville, 459 U.S. at 565 (concluding that it is not "fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, even though respondent was not specifically warned that his refusal could be used against him at trial")).

¶64  In addition, Wis. Stat. § 343.305(3)(b)'s presumption affects only unconscious drivers for whom law enforcement has probable cause to believe that the driver has violated statutory proscriptions on use of intoxicants.  Therefore, those drivers

29

who are unconscious but for whom law enforcement does not have probable cause to believe they drove while intoxicated will not be subject to the presumption of § 343.305(3)(b).

¶65 For drivers for whom the presumption applies, Wis. Stat. § 343.305(3)(b) is consistent with United States Supreme Court precedent that a warrantless search at arrest does not violate the Fourth Amendment when there is consent given prior to the search.  United States v. Robinson, 414 U.S. 218, 224 (1973); Schneckloth, 412 U.S. at 222.  Therefore, we conclude that under the totality of circumstances the presumption of § 343.305(3)(b) is reasonable.  Accordingly, it does not violate Fourth Amendment rights of one for whom law enforcement has probable cause to believe he or she operated a vehicle after consuming alcohol or drugs to the point of intoxication.

### III.  CONCLUSION

¶66 We conclude that Mitchell voluntarily consented to a blood draw by his conduct of driving on Wisconsin's roads and drinking to a point evidencing probable cause of intoxication. Further, through drinking to the point of unconsciousness, Mitchell forfeited all opportunity, including the statutory opportunity under Wis. Stat. § 343.305(4), to withdraw his consent previously given; and therefore, § 343.305(3)(b) applied, which under the totality of circumstances reasonably permitted drawing Mitchell's blood.  Accordingly, we affirm Mitchell's convictions.

*By the Court.*—The judgment of the circuit court is affirmed.

30

¶67 DANIEL KELLY, J. *(concurring).* I do not believe the state can waive the people's constitutional protections against the state. I nonetheless concur because performing a blood draw on an unconscious individual who has been arrested for operating a motor vehicle while intoxicated in violation of Wis. Stat. § 346.63 ("OWI") is reasonable within the meaning of the Fourth Amendment to the United States Constitution.[1]

¶68 This is not the first time we have considered whether a law enforcement officer may perform a blood draw on an individual pursuant to "consent" granted by Wis. Stat. § 343.305. Last term we considered whether such "implied consent" can satisfy the requirements of the Fourth Amendment to the United States Constitution. See State v. Brar, 2017 WI 73, ¶¶15, 28-29, 376 Wis. 2d 685, 898 N.W.2d 99 (lead opinion). No opinion attracted a majority of the court. I concurred because Mr. Brar was conscious and had provided express consent to a blood draw, a point on which a majority of the court agreed. However, because the court nonetheless addressed the constitutionality of the implied consent statute, I also explained why I believe that "implied consent" is actually consent granted by the legislature, not the suspect, and why legislative consent cannot satisfy the mandates of our State and Federal Constitutions. See id., ¶¶44, 59 (Kelly, J., concurring); see also id., ¶15 & n.6 (lead opinion) (discussing

---

[1] I join paragraphs 1-2 and 4-28 of the lead opinion.

federal and state constitutional provisions). I incorporate that analysis here in toto.

¶69 The court today is even more ambitious than it was in Brar. Legislatively-granted consent to perform a blood draw is justified, the court says, for the same reasons certain searches of pervasively-regulated businesses do not require warrants. Lead op., ¶¶25-28 (citing Marshall v. Barlow's, Inc., 436 U.S. 307 (1978); Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970)). But the court misunderstands the significance of that line of cases. The searches considered there were not reasonable because a legislature said they were; they were reasonable because they did not intrude on the affected person's reasonable expectation of privacy. In Colonnade Catering, for example, the United States Supreme Court surveyed the regulatory history of the liquor industry, reaching as far back as England of the eighteenth century. Colonnade Catering, 397 U.S. at 75. The whole point of rehearsing that history was to demonstrate that a liquor retailer had no reasonable expectation his premises would be free from regular governmental inspection. See id. Therefore, the congressionally-developed inspection regime at issue in Colonnade Catering was constitutional because it operated in an area in which the retailer had no reasonable expectation of privacy. The United States Supreme Court has treated the firearm industry in a similar fashion. In United States v. Biswell, 406 U.S. 311 (1972), the Court said "[i]t is also apparent that if the law is to be properly enforced and inspection made effective, inspections without warrant must be

2

deemed reasonable official conduct under the Fourth Amendment." Id. at 316. Although the Court chose a stilted means of explaining itself, it is apparent the Court had concluded that the inspection regime in that case did not reach into an area in which the pawn dealer had a reasonable expectation of privacy. See id. The "pervasive-regulation" doctrine, therefore, allows warrantless inspection regimes only when the nature of the business at issue is such that the proprietor does not have an expectation of privacy.

¶70 The court should not venture into the "pervasive-regulation" arm of Fourth Amendment jurisprudence without a great deal of fear and trepidation. The rationale justifying this doctrine is too easy to abuse. If increased regulation decreases the areas in which individuals have a reasonable expectation of privacy, then the Fourth Amendment's protections are effectively contingent on the reach of the regulatory state. Through combined legislative and executive activity, oceans of regulations can wear away zones of privacy, allowing warrantless inspection regimes to follow in their wake.

¶71 Today's decision is a good example of the doctrine's erosive power. Driving, the court observes, is subject to many regulations, what with all the rules about staying on the right side of the road, speed limits, interactions with emergency vehicles, et cetera. The court could have mined that vein even more deeply than it did—under any definition, driving truly is pervasively-regulated. The temptation to reach for the doctrine under these circumstances is nearly irresistible. And why

3

wouldn't it be? It fairly demands to be heard here. But this is a powerful and unruly force, and when the United States Supreme Court set it in motion, it impressed on the doctrine no internal logic capable of limiting its reach.

¶72 The court thinks to wield this doctrine here with limited effect——after all, we are simply justifying a warrantless blood draw. But the court misapprehends how the doctrine functions and, therefore, its consequences. If we are of a mind that this doctrine justifies the implied consent law, we may do so only if we first conclude that regulatory pervasiveness has removed the subject of its operation from the reasonable expectation of privacy. See Colonnade Catering, 397 U.S. at 75; Biswell, 406 U.S. at 316. That is to say, because driving is pervasively regulated, those who travel on Wisconsin's highways have no reasonable expectation of privacy as they engage in that activity. And if that is true, it would sweep away a large body of Fourth Amendment jurisprudence as it relates to traffic stops, searches of automobiles, searches of drivers and passengers, et cetera. Wielding this doctrine as the court does today, if we are serious about its application, calves off a substantial piece of the Fourth Amendment.

¶73 For these reasons, and the reasons I discussed in my Brar concurrence, I conclude that the consent implied by Wis. Stat. § 343.305 cannot justify the blood draw performed on Mr. Mitchell.

4

*

¶74 But this case is not Brar, and different reasons justify the blood draw here. The most important distinction between the two cases is this: Mr. Mitchell was not conscious when the law enforcement officer determined that a blood draw was necessary. No Supreme Court decision has yet opined directly on whether a warrant is necessary to perform a blood draw under these circumstances; I believe the interplay among Schmerber v. California, 384 U.S. 757 (1966), Missouri v. McNeely, 569 U.S. 141 (2013), and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), leave that question open. Their combined rationale, however, indicates that no warrant is necessary to perform a blood draw when an individual has been arrested for OWI, the suspect is unconscious, and there is a risk of losing critical evidence through the human body's natural metabolization of alcohol.

¶75 For more than half a century now the United States Supreme Court has recognized that warrantless blood draws can be constitutional. In Schmerber, the Supreme Court recognized that exigent circumstances can justify a warrantless blood draw from an individual arrested on OWI charges. See Schmerber, 384 U.S. at 770-71. It said the human body's natural metabolization of alcohol could, under the right circumstances, cause an officer to "reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" Id. at 770 (citation omitted).

5

¶76 More recently, the State of Missouri pressed the Supreme Court to adopt a rule that the natural metabolization of alcohol in the bloodstream presents a per se exigency. McNeely, 569 U.S. at 151-52. The Court refused, but confirmed the continuing vitality of the rule that the proper circumstances will still justify a warrantless blood draw. "We do not doubt," the Court said, "that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." Id. at 153. Therefore, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." Id. at 156.

¶77 The constitutionality of a warrantless blood draw returned to the Supreme Court in the context of the "search incident to arrest" doctrine in Birchfield. 136 S. Ct. at 2179, 2185. There, the Court said this doctrine justifies a warrantless breath test when the individual has been arrested for OWI; however, it does not justify a warrantless blood draw (at least when the suspect is conscious). See id. at 2185. In reaching this conclusion, the Court placed heavy emphasis on the differing levels of intrusiveness between the two tests. Id. at 2178. Thus, for example, it said that "[b]ecause breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, we conclude that a breath test, but not a blood test, may be administered as a

6

search incident to a lawful arrest for drunk driving." Id. at 2185.

¶78 Availability of the breath test, however, was the driving motivation for its ruling. In the absence of such an option, the reasonableness of a warrantless blood test increases:

> We reach a different conclusion with respect to blood tests. Blood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test. Respondents have offered no satisfactory justification for demanding the more intrusive alternative without a warrant.

Id. at 2184.

¶79 Combining the reasoning of Schmerber, McNeely, and Birchfield provides the necessary guidance for Mr. Mitchell's case. Schmerber established the ground-rule principle that a warrantless blood draw can be constitutional. See Schmerber, 384 U.S. at 770-71. McNeely refined the Schmerber holding when it explained that, under the right circumstances, "the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." See McNeely, 569 U.S. at 153. Birchfield added two important pieces to the analysis. First, it established that an individual arrested for OWI may be searched incident to his arrest for evidence of intoxication without a warrant. See Birchfield, 136 S. Ct. at 2184. And second, it determined that the method by which law enforcement conducts the search (by breath test as opposed to blood test) depends on the availability of the less-intrusive option. See id. at 2185.

7

¶80 Here is how the Supreme Court's instructions apply in this case. Mr. Mitchell, of course, was arrested for OWI, so Schmerber and McNeely recognize that critical evidence of his intoxication was continually metabolizing away. They also explain that although metabolization alone would not support a warrantless blood draw, when combined with other elements it may. Birchfield says his privacy interest in the evidence of intoxication within his body is no longer a factor because the "search incident to arrest" doctrine is a recognized exception to the warrant requirement. So the only question remaining is whether the search should be conducted via a breath test or a blood test. Birchfield tells us that we must consider the availability of the less intrusive test in making this decision. Mr. Mitchell, however, was unconscious, so the breath test was not an option. A warrantless blood test was reasonable, therefore, because he had been arrested for OWI, evidence of the offense was continually dissipating, there was no telling how long he would be unconscious, his privacy interest in the evidence of intoxication within his body had been eviscerated by the arrest, and no less intrusive means were available to obtain the evanescent evidence.

¶81 I recognize that Birchfield holds a cautionary note about blood tests performed on unconscious suspects, but it appears to be in the form of an explanation for why the Court devoted just two sentences to the subject:

> It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due

8

to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.

Birchfield, 136 S. Ct. at 2184-85. Nothing in the opinion indicates the Supreme Court considered how its analytical structure would apply in the context of an unconscious suspect arrested for OWI, and it would be too much like reading tea leaves to give any substantive weight to a statement that simply gives the Court's reasons for not addressing the question we are deciding.[2]

---

[2] The dissent believes Birchfield has already answered this question, and therefore concludes my "analytical exercise ultimately fails because it cannot be reconciled with Birchfield's central holding: 'a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving.'" Dissent, ¶101 n.6 (quoting Birchfield v. North Dakota, 136 S. Ct. 2160, 2185 (2016)) (emphasis omitted). The Supreme Court stated that central holding, however, in the context of a suspect who, unlike Mr. Mitchell, was conscious. This is a distinction that Birchfield itself advanced, so it's entirely justifiable to explore its significance, as I have done in this opinion.

But there is an even more important reason the dissent should be chary of finding such a categorical prohibition in that precedent: Birchfield is not comfortable in its own skin. Its central logic is actually self-contradictory, which explains why both the court and the dissent are able to call on it for support. If the Supreme Court had endorsed implied-consent laws as sufficient to authorize a breath or blood test (as our court says), then it would have held that implied consent justified the breath test. But it didn't. It said the "search incident to arrest" exception to the Fourth Amendment's warrant requirement justified the breath test. On the other hand, if Birchfield forbids blood draws pursuant to an implied-consent law, as the dissent claims, then such a law could not justify the breath test either, inasmuch as the law either provides constitutionally-sound consent for both, or for neither.

(continued)

9

*

¶82 Apropos of nothing relevant to this case, the lead opinion says a quartet of the court's members, including the author of this concurrence and the justice who joins it, "label refusal of chemical testing a constitutional right [in State v. Dalton, 2018 WI 85, ¶61, __ Wis. 2d __, __ N.W.2d __]." See lead op., ¶53 n.13. If the lead opinion means to say that we understand the people of Wisconsin have a constitutionally-protected right to be free from warrantless, unreasonable searches, then it is spot-on. And if the lead opinion further means to say that we recognize that the people of Wisconsin may operationalize that constitutionally-protected right by refusing warrantless, unreasonable searches, then it again hits the bulls-eye. But none of that happened in Dalton. It happened when the people of this nation ratified the Bill of Rights. We have done nothing new here; we only recognize what is already the law.

¶83 Ultimately, the lead opinion is of two minds on whether a suspect may refuse a blood test, and it expressed both of them. On the one hand, it says that, "in a state with civil

_____

So I disagree with the dissent that I cannot reconcile my analytical exercise to Birchfield's central holding. When the Supreme Court speaks with two contradictory voices in one opinion, the best we can do is follow its logic until it starts contending with itself. Here, that means Birchfield stands for the proposition that, with respect to conscious drunk-driving suspects, the "search incident to arrest" doctrine covers breath tests, but not blood draws. Because Mr. Mitchell was not conscious, Birchfield does not control the disposition of this case.

penalties for refusal to submit to a blood draw, 'a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test.'"  Lead op., ¶38 (quoting South Dakota v. Neville, 459 U.S. 553, 560 n.10 (1983)).  But almost immediately afterwards it also said:  "Of course, consent voluntarily-given before a blood draw may be withdrawn with or without a statutory reminder."  Lead op., ¶40 (citing United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005)).  So which is it?  May a suspect refuse a blood test or not?

¶84  Perhaps, however, the lead opinion means to say that when a blood test is conducted pursuant to consent——real consent, the kind that people provide, not legislatures——the consent can be withdrawn, but when conducted pursuant to legislatively-provided consent, it cannot.  That seems to be the import of the observation that the "right to refuse the blood-alcohol test . . . is simply a matter of grace bestowed by the . . . legislature."  See lead op., ¶39 (quoting Neville, 459 U.S. at 565).  But if that is so, what possible jurisprudential theory allows a statute to make permanent what the constitution makes revocable?[3]

---

[3] The right to refuse a search, and to revoke consent once given, has been a part of Fourth Amendment jurisprudence for a very long time.  See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973) (stating that consent may be refused); United States v. Carter, 985 F.2d 1095, 1097 (D.C. Cir. 1993) (stating that consent may be withdrawn); United States v. Black, 675 F.2d 129, 138 (7th Cir. 1982) (same); Mason v. Pulliam, 557 F.2d 426, 428 (5th Cir. 1977) (stating that nothing in Schneckloth prevents consent from being withdrawn).

11

*

¶85 For these reasons, I respectfully concur in our court's mandate.

¶86 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

¶87 ANN WALSH BRADLEY, J. *(dissenting).* A blood draw is a particularly intrusive search. It invades the interior of the human body and implicates interests in human dignity and privacy. <u>Schmerber v. California</u>, 384 U.S. 757, 769-70 (1966). To allow a blood draw without a warrant runs counter to these significant interests, not to mention United States Supreme Court precedent.

¶88 The police took Gerald Mitchell's blood without a warrant while he was unconscious. According to the lead opinion[1], this is perfectly fine because Mitchell by implication "voluntarily consented" to a blood draw and, while he was unconscious, did not revoke such consent.

---

[1] I use the term "lead" opinion for two reasons. First, I am concerned that without this cue, the reader may mistakenly believe that the lead opinion has any precedential value. Although five justices join in the mandate of the opinion to affirm the court of appeals (Roggensack, C.J., joined by Ziegler, J., Gableman, J., Rebecca Grassl Bradley, J., and Kelly, J.,), it represents the reasoning of only three justices (Roggensack, C.J., joined by Ziegler, J., and Gableman, J.). Justices Rebecca Grassl Bradley and Kelly joined in the mandate, but they would rely on contrary reasoning. Other paragraphs of the lead opinion that Justice Kelly indicates that he joins provide only uncontested factual and legal background that do not include the lead opinion's reasoning. <u>See</u> Justice Kelly's concurrence, ¶67 n.1.

Although set forth in two separate opinions, four justices disagree with the reasoning of the lead opinion. Importantly, contrary to the lead opinion, four justices determine that the implied consent laws cannot justify the warrantless blood draw performed in this case (Abrahamson, J., Ann Walsh Bradley, J., Rebecca Grassl Bradley, J., and Kelly, J.).

The lead opinion fails to alert readers as to the non-precedential status of its essential reasoning. Lest the rule of law be unclear to courts and litigants: BY THEMSELVES, THE IMPLIED CONSENT LAWS CANNOT JUSTIFY A WARRANTLESS BLOOD DRAW.

1

¶89 Contrary to the lead opinion, I determine that "implied consent" is not the same as "actual consent" for purposes of a Fourth Amendment search. By relying on the implied consent laws, the lead opinion attempts to create a statutory per se exception to the constitutionally mandated warrant requirement. Thus, it embraces a categorical exception over the constitutionally required consideration of the totality of the circumstances. Consent provided solely by way of an implied consent statute is constitutionally untenable.[2]

¶90 Accordingly, I respectfully dissent.

I

¶91 Mitchell was arrested for operating while intoxicated. En route to a nearby hospital, he lost consciousness. Despite Mitchell's incapacitation, a police officer read him the Informing the Accused form. Mitchell provided no response because he was unconscious. The officer then directed hospital staff to draw a sample of Mitchell's blood, and they did so. Mitchell remained unconscious as his skin was pierced and his blood taken.

¶92 Seeking to exclude the evidence obtained as a result of the blood draw, Mitchell filed a motion to suppress. He premised his motion on the contention that the warrantless

_____

[2] I observe that the concurrence and this dissent are in accord on this point. The concurrence "do[es] not believe that the state can waive the people's constitutional protections against the state." Concurrence, ¶67. Accordingly, it concludes that "the consent implied by § 343.305 cannot justify the blood draw performed on Mr. Mitchell." Id., ¶73.

2

taking of his blood while he was unconscious violated his Fourth Amendment rights.

¶93 The lead opinion rejects Mitchell's argument, concluding that the consent exception to the Fourth Amendment's warrant requirement applies. Lead op., ¶3. According to the lead opinion, Mitchell "voluntarily consented to a blood draw by his conduct of driving on Wisconsin's roads and drinking to a point evidencing probable cause of intoxication." Id. Further, in the lead opinion's view, Mitchell "forfeited all opportunity, including the statutory opportunity under Wis. Stat. § 343.305(4), to withdraw his consent previously given . . . ." Id.

II

¶94 The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures. State v. Eason, 2001 WI 98, ¶16, 245 Wis. 2d 206, 629 N.W.2d 625. A warrantless search is presumptively unreasonable unless an exception to the warrant requirement applies. State v. Tullberg, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120.

¶95 One such exception to the warrant requirement is a search conducted pursuant to consent. State v. Artic, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. The lead opinion correctly states that relevant words, gestures or conduct may support a finding of consent. Lead op., ¶20 (citing Artic, 327

Wis. 2d 392, ¶30).[3] However, it errs by departing from Mitchell's "words, gestures or conduct" to determine that he impliedly consented for the state to draw his blood.

¶96 The lead opinion's conclusion is based on Wisconsin's implied consent laws, one subsection of which provides that any person operating a motor vehicle in Wisconsin "is deemed to have given consent to one or more tests of his or her breath, blood or urine" when requested to do so by a law enforcement officer in certain circumstances. Wis. Stat. § 343.305(2).

¶97 Another subsection specifically addresses the situation where a driver is unconscious. Wisconsin Stat. § 343.305(3)(b) provides that "[a] person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection." It further states that a law enforcement officer may administer a breath, blood, or urine test if probable cause exists that the driver has committed any of a list of offenses. Id.

---

[3] The lead also cites State v. Phillips, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998), for the proposition that consent to search need not be given verbally. Lead op., ¶21. In Phillips, when asked by law enforcement whether they could search the defendant's bedroom, "the defendant did not respond verbally, but he opened the door to and walked into his bedroom, retrieved a small baggie of marijuana, handed the baggie to the agents, and pointed out a number of drug paraphernalia items." 218 Wis. 2d at 197. The court concluded that "[t]he defendant's conduct provides a sufficient basis on which to find that the defendant consented to the search of his bedroom." Id. The affirmative assistance provided by the defendant in response to a request to search in Phillips is a far cry from the complete lack of response from the defendant here.

¶98 In determining whether the warrantless taking of a blood draw from an unconscious person pursuant to Wis. Stat. § 343.305(3)(b) violates the Fourth Amendment, I begin my analysis with Birchfield v. North Dakota, 579 U.S. __, 136 S. Ct. 2160 (2016). In Birchfield, the United States Supreme Court determined that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." Id. at 2185.

¶99 Birchfield emphasized the invasive nature of a blood test, which is significant for Fourth Amendment purposes. See id. at 2184. In comparison to a breath test, a blood test is "significantly more intrusive[.]" Id. As an intrusion "beyond the body's surface," a blood test implicates paramount "interests in human dignity and privacy[.]" Id. at 2183 (citing Schmerber, 384 U.S. at 769-70). Indeed, a blood test can provide a lot more information than just a person's blood alcohol content.[4]

¶100 The Birchfield court further addressed the precise circumstances that have arisen in this case:

> It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to

---

[4] "[A] blood test, unlike a breath test, places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading. Even if the law enforcement agency is precluded from testing the blood for any purpose other than to measure BAC, the potential remains and may result in anxiety for the person tested." Birchfield v. North Dakota, 579 U.S. __, 136 S. Ct. 2160, 2178 (2016).

5

do what is needed to take a breath test due to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.

136 S. Ct. at 2184-85 (emphasis added).

¶101 This language compels a single conclusion: law enforcement needed a warrant here. First, the State concedes that there were no exigent circumstances that would justify a departure from the warrant requirement.[5] Second, the ultimate holding in Birchfield was that a blood test cannot be administered as a search incident to arrest for drunk driving. Id. at 2185. The lead opinion's interpretation of the implied consent statutes attempts to accomplish exactly what the Birchfield court said violates the Fourth Amendment——a blood test as a search incident to the arrest of an unconscious person for drunk driving.[6]

---

[5] See State v. Tullberg, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120.

[6] The concurrence focuses on language in Birchfield stating a blood test's "reasonableness must be judged in light of the availability of the less intrusive alternative of a breath test." Birchfield, 136 S. Ct. at 2184; see concurrence, ¶¶77-79. It creatively interprets this language to indicate that, because a breath test was unavailable due to Mitchell's unconsciousness, a blood test was constitutionally reasonable. Id., ¶80. The concurrence's analytical exercise ultimately fails because it cannot be reconciled with Birchfield's central holding: "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." Birchfield, 136 S. Ct. at 2185 (emphasis added).

(continued)

6

¶102 Unlike the lead opinion, I would follow, rather than attempt to overrule, the court of appeals in State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867. The Padley court emphasized that, when analyzing whether there was a consensual search, the determining factor was whether the driver gave actual consent to the blood draw:

> [T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give actual consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of "implied consent," choosing the "yes" option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the "no" option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent.

354 Wis. 2d 545, ¶39. As Justice Abrahamson has explained, "[t]he Padley court concluded that a driver's actual consent occurs after the driver has heard the Informing the Accused Form, weighed his or her options (including the refusal penalties), and decided whether to give or decline actual consent." State v. Brar, 2017 WI 73, ¶116, 376 Wis. 2d 685, 898 N.W.2d 499 (Abrahamson, J., dissenting).

---

Federal and state courts around the country have cited the "but not a blood test" language a multitude of times. See, e.g., Robertson v. Pichon, 849 F.3d 1173, 1184 n.7 (9th Cir. 2017; Espinoza v. Shiomoto, 215 Cal. Rptr. 3d 807, 829 (Ct. App. 2017); State v. Ryce, 396 P.3d 711, 717 (Kan. 2017); State v. Reynolds, 504 S.W.3d 283, 307 (Tenn. 2016). The concurrence is unable to cite to any court that eschews the clear language of Birchfield's central holding in favor of the unique interpretation it now embraces.

7

¶103 That implied consent and actual consent are separate and distinct concepts is confirmed by an analysis of recent United States Supreme Court precedent in addition to Birchfield.[7] In Missouri v. McNeely, the Supreme Court determined that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." 569 U.S. 141, 156 (2013). A case by case determination is the antithesis of a categorical exception. Although McNeely was an exigent circumstances case, the court's emphasis on the totality of the circumstances suggests broad application of the case by case determinations it requires. Brar, 376 Wis. 2d 685, ¶122 (Abrahamson, J., dissenting).

¶104 Indeed, the Supreme Court implied such a broad application of McNeely in Aviles v. Texas, 571 U.S. 1119 (2014). In Aviles, the Court vacated a Texas judgment upholding a warrantless blood draw based not on actual consent but on implied consent derived through the Texas implied consent law. 571 U.S. 1119 (2014). The Court further remanded the Aviles case to the Texas court of appeals for further consideration in light of McNeely. Id.

¶105 "Aviles suggests that McNeely should be read broadly to apply to all warrantless blood draws and that the Texas implied consent statute was not a per se exception to the Fourth

_____

[7] For further in-depth analysis of this assertion, see State v. Brar, 2017 WI 73, ¶¶119-126, 376 Wis. 2d 685, 898 N.W.2d 499 (Abrahamson, J., dissenting).

Amendment justifying warrantless blood draws." Brar, 376 Wis. 2d 685, ¶123 (Abrahamson, J., dissenting). On remand the Texas court of appeals concluded that the Texas implied consent statute "flies in the face of McNeely's repeated mandate that courts must consider the totality of the circumstances of each case." Aviles v. State, 443 S.W.3d 291, 294 (Tex. Ct. App. 2014).

¶106 The upshot of these United States Supreme Court cases is that reliance on an implied consent statute to provide actual consent to a Fourth Amendment search violates McNeely's requirement that each blood draw in a drunk driving case be analyzed on a case by case basis. The implied consent statute attempts to create a per se exception to the warrant requirement. Of course, categorical consent is by definition not individualized.

¶107 The lead opinion employs the simple act of driving an automobile as justification for a search. The untenability of the lead opinion's position is aptly illustrated by Justice Kelly's concurrence in Brar, 376 Wis. 2d 685, ¶¶59-66 (Kelly, J., concurring). As Justice Kelly explains, a court's normal constitutional inquiry into whether consent is given involves an examination of the totality of the circumstances and a determination that the consent was voluntary and not mere acquiescence to authority. Id., ¶¶59-62. On the other hand, "[f]or 'consent' implied by law, we ask whether the driver drove his car." Id., ¶64.

9

¶108 Further, the lead opinion errs by relying not on a constitutionally well-recognized exception to the warrant requirement, but instead on a Wisconsin statute, to curtail constitutional protections. By seeking to create a <u>statutory</u>, per se consent exception to the warrant requirement, the lead opinion further steps into a minefield. <u>See</u> lead op., ¶¶53-55 (asserting that Mitchell "forfeited the statutory opportunity to withdraw the consent to search that he had given.").

¶109 A blood draw is plainly a "search" for Fourth Amendment purposes. <u>Birchfield</u>, 136 S. Ct. at 2185. Accordingly, one has a constitutional right, not merely a statutory right, to refuse such a search absent a warrant or an applicable exception.[8] <u>See</u> <u>State v. Dalton</u>, 2018 WI 85, ¶61, __ Wis. 2d __, __ N.W.2d __. Under the lead opinion's analysis, however, the opportunity to refuse an unconstitutional search is merely a matter of legislative grace. If the ability to withdraw consent is merely statutory, could the legislature remove the ability to withdraw consent entirely? For the Fourth Amendment to have any meaning, such a result cannot stand.

¶110 I therefore conclude that implied consent is insufficient for purposes of a Fourth Amendment search. As the

---

[8] The lead opinion's reliance on <u>South Dakota v. Neville</u>, 459 U.S. 553, 560 n.10 (1983), is misplaced. <u>See</u> lead op., ¶¶38-39. <u>Neville</u> was decided pre-<u>McNeely</u> and pre-<u>Birchfield</u>. Both <u>McNeely</u> and <u>Birchfield</u> have had a significant effect on drunk driving law, and highlight the constitutional nature of a blood draw. Both cases analyze breath and blood tests as Fourth Amendment searches and appear to supersede the statement from the Fifth Amendment <u>Neville</u> case on which the lead opinion relies.

court of appeals explained in Padley, the implied consent law does not authorize searches. Rather, it authorizes law enforcement to require a driver to make a choice: provide actual consent and potentially give the state evidence that the driver committed a crime, or withdraw implied consent and thereby suffer the civil consequences of withdrawing consent. Padley, 354 Wis. 2d 545, ¶39.

¶111 A person who is unconscious cannot make this choice. Because he was unconscious, Mitchell did not react to the Informing the Accused Form when law enforcement presented him with his options. He exhibited no "words, gestures, or conduct" that would indicate his actual consent to a blood draw. See Artic, 327 Wis. 2d 392, ¶30.

¶112 Because consent provided solely by way of an implied consent statute is not constitutionally sufficient, I determine that the results of Mitchell's blood draw must be suppressed. Accordingly, I respectfully dissent.

¶113 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.